Robert E. ASKINS, Appellant

v.

DISTRICT OF COLUMBIA, et al.

No. 87–7232.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 13, 1989.
Decided June 9, 1989.

David Orentlicher, for appellant. Margaret L. Tobey and Kurt Wimmer, Washington, D.C., also entered appearances, for appellant.

Mary L. Wilson, with whom Frederick D. Cooke, Jr., Corp. Counsel, Dist. of Col., and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., Dist. of Col., were on the brief, for appellees.

Before ROBINSON, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

Dissenting opinion filed by Circuit Judge SENTELLE.

HARRY T. EDWARDS, Circuit Judge:

Appellant Robert E. Askins is an inmate at the Maximum Security Facility of the Lorton Reformatory. He brought this action in District Court, under 42 U.S.C. § 1983 (1982), and the First and Eighth Amendments,[1] to enjoin the D.C. Govern-

---

1. Askins also brought actions under the due process clauses of the Fifth and Fourteenth

ment and prison officials from transferring him to Lorton's Central Facility and from punishing him for refusing to cooperate with the proposed transfer. Askins complains that his life will be endangered if he is transferred to Central because two inmates incarcerated there have threatened to kill him. Prison officials doubt the veracity of these charges and, in any event, they assert that Askins' complaint is groundless because no final decision has been made on his transfer.

The District Court dismissed Askins' suit in its entirety. The trial court found the Eighth Amendment claim unripe because prison officials had yet to decide whether to transfer Askins; the court also dismissed the First Amendment claim for lack of ripeness, holding that its viability depended upon the validity of the Eighth Amendment claim. Although finding no ripe dispute to adjudicate, the District Court nevertheless granted the Government's motion for summary judgment and dismissed the case with prejudice. *See Askins v. District of Columbia*, No. 87–2110, slip op. (D.D.C. Nov. 13, 1987).

We affirm the judgment of the District Court dismissing Askins' Eighth Amendment claim as unripe; however, we reverse the trial court's judgment on the merits in favor of the Government. If Askins' Eighth Amendment claim is unripe because no decision has been made on his transfer, then the trial court has no authority at this juncture to resolve the claim on the merits. There was therefore no basis for dismissal with prejudice on the merits. Moreover, because it appears that Askins' First and Eighth Amendment claims raise independent causes of action, and that his First Amendment claim is not unripe for review, we reverse the District Court's dismissal of this issue and remand for consideration on the merits.

## I. BACKGROUND

### A. *Summary of Facts*

Askins, who is 69 years old, has been an inmate at Lorton's Maximum Security Fa-

cility since his imprisonment on December 14, 1978. He is serving a term of 25 years to life for rape while armed, sodomy, assault with a dangerous weapon, and kidnapping. He was initially assigned to the Maximum Security Facility because of the severity of his sentence. It is undisputed that he is hard of hearing, claustrophobic, and suffers from numerous stress-related ailments. *Id.* at 2.

Until now, prison officials have seen no need to move Askins out of Maximum Security. However, as a result of litigation brought by other prisoners, the D.C. Government is currently under court order to renovate portions of the Maximum Security Facility. This will require about 100 of the 536 prisoners housed in Maximum Security to be relocated to one of the other eight Lorton facilities. Because he is not an escape risk or a threat to himself or others, Askins is one of the inmates being considered for transfer to the less secure Central Facility. Before a final transfer decision can be made, however, prisoners must undergo a diagnostic examination both to determine their suitability for transfer and to help design appropriate placement.

On July 7, 1987, Askins was ordered to submit to a diagnostic examination. He refused, claiming that he had enemies at the Central Facility who would harm him if he were transferred. Because of his "lack of cooperation," prison officials committed Askins to fourteen days in punitive segregation. On July 20, Askins again refused to submit to the examination, and he again was made the subject of a disciplinary report.

Askins contends that his fear of being transferred to Central is attributable to alleged altercations at Maximum Security with two prisoners who have subsequently been transferred to Central. According to Askins, the first incident involved an inmate named William Terry, who, several

Amendments, which were dismissed without prejudice and are not appealed here. The trial court declined to exercise pendent jurisdiction over the claims Askins brought under District of Columbia law.

years ago, showed Askins a hollowed-out book with a homemade knife hidden inside. Askins reported the incident to the prison's Catholic chaplain. A search was conducted, resulting in the seizure of the weapon and the transfer of one of Terry's friends to a federal prison. Terry was later transferred to Central. Askins believes that Central will be a dangerous place for him because of Terry's presence and influence there; Askins is particularly concerned about being transferred to a facility where he will be labelled an "informant." *Id.* at 4–5.

The second alleged incident to which Askins refers involved inmate James Fisher. During 1983, Askins was a leader of the Catholic–Protestant community at Maximum Security, and Fisher was a leader of the Seventh Day Adventist community. At the time, it was customary for religious leaders to invite other leaders to "family day" worship services, where family and friends from outside the prison could visit in a relatively unsupervised environment. A disagreement purportedly arose between Fisher and Askins over invitations to family day services. According to Askins, a heated argument ensued in the prison chapel just before Fisher was transferred to Central, during which Fisher warned Askins that he was "living on borrowed time." *Id.* at 5–6.

Prison officials, however, doubt whether these events and threats actually occurred. Instead, prison officials assert that Askins' descriptions of these incidents were prompted by his desire to avoid being transferred out of Maximum Security. Prison officials believe that Askins does not truly fear for his safety, but merely feels that a move would be upsetting and stressful. *Id.* at 7. In short, they view Askins' claims as a smokescreen to protect the life to which he has grown accustomed at the Maximum Security Facility. *Id.* at 3. Nevertheless, prison officials claim that they have made no final decision on Askins' transfer because none can be made until Askins undergoes the required testing.

## B. *Proceedings Below*

Askins filed suit on July 30, 1987, and a temporary restraining order ("TRO") was issued prohibiting the prison from transferring him. On August 10, 1987, counsel for the prison represented in open court that Askins would not be transferred or punished pending a consolidated hearing on the parties' cross-motions for summary judgment and Askins' application for a preliminary injunction. Thus, the status quo has been maintained throughout the litigation despite the expiration of the TRO.

Askins brought both of his constitutional claims under section 1983 of the Civil Rights Act of 1871, which provides a remedy for a citizen deprived of his constitutional rights by another person acting under color of state law. *See* 42 U.S.C. § 1983 (1982); *see also* Pub.L. No. 96–170, 93 Stat. 1284 (1979) (extending coverage of section 1983 to citizens of the District of Columbia). First, Askins claimed that the proposed transfer would violate his Eighth Amendment right to be free of cruel and unusual punishments, U.S. CONST. amend. VIII; *see also Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Specifically, he alleged that requiring him to live in a lower-security facility with Fisher and/or Terry would subject him to an unreasonable threat of violence by fellow inmates in violation of the Eighth Amendment. *See Murphy v. United States*, 653 F.2d 637, 644–45 (D.C.Cir.1981). Second, Askins claimed that the First Amendment protects him from being punished for refusing to undergo the diagnostic testing, because he had a legal right to refuse. In support of this claim, Askins asserts that he would have been immediately transferred to Central upon completion of the testing, before he could pursue any legal challenge to the transfer. He therefore refused to take the examination because he believed that it was the only way he could preserve his right to challenge his transfer, and thereby preserve his alleged First Amendment right of access to the courts. Thus, according to Askins, his refusal was a valid exercise of this First Amendment right, for which he cannot lawfully be punished.

The District Court dismissed Askins' Eighth Amendment claim as "not ripe" because "no decision has been made to transfer him." *Askins,* slip op. at 8. The trial judge also found Askins' First Amendment claim unripe, because its viability was deemed to depend upon the legal validity of the Eighth Amendment claim.

Although finding no ripe case or controversy, the District Court nevertheless went ahead and decided the case on the merits. The court first noted the heavy burden Askins carried, because " 'deliberate indifference' to inmates' security" must be shown in order to establish a violation of a prisoner's Eighth Amendment rights. *Id.* at 9 (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Morgan v. District of Columbia,* 824 F.2d 1049, 1058 (D.C.Cir.1987)). Doubting that Askins "could carry his burden if the case were ripe," slip op. at 10, because "the only evidence of threats made [by Terry and Fisher] is in plaintiff's own declaration," *id.,* the trial court concluded that the prison was within legal bounds to disagree with Askins' assessment of the risk to his life, and that it did not act in a way that showed "flagrant[ ] indifferen[ce]" to Askins' safety, *id.* at 10–11. Thus, the trial court disposed of Askins' Eighth Amendment claim on summary judgment on the merits, dismissing with prejudice. The District Court also issued a summary judgment on the merits against Askins on his First Amendment claim, finding that this claim could not stand absent a viable claim under the Eighth Amendment.

## II. ANALYSIS

### A. *Ripeness Doctrine*

An administrative decision becomes ripe for judicial review when it "has been formalized and its effects felt in a concrete way by the challenging part[y]." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). *Abbott Laboratories* explains that the reason for this insistence on the finality of an administrative decision is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from [premature] judicial interference." *Id.* at 148, 87 S.Ct. at 1515.

In order to measure the propriety of deferring review, *Abbott Laboratories* developed a two-pronged test, evaluating "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515; *see also Better Gov't Ass'n v. Department of State,* 780 F.2d 86, 92 (D.C.Cir.1986). Elaborating on this standard, this court has stated:

Generally, in ascertaining whether a suit is ripe, courts must balance "the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting."

*Payne Enterprises v. United States,* 837 F.2d 486, 492 (D.C.Cir.1988) (quoting *Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985)).

■ In applying the ripeness doctrine, we have explained how an assessment of the "fitness" prong may affect the relevance of any alleged "hardship."

Under the "fitness of the issues" prong, this court takes account of the institutional capacities of, and the relationship between, courts and agencies. We look, for example, to see if the issue raises a purely legal question. If it does, we assume its threshold suitability for judicial determination. We also consider whether the agency or the court will benefit from deferring review until the agency's policies have crystallized and the "question arises in some more concrete and final form" [*Continental Air Lines Inc. v. Civil Aeronautics Board,* 522 F.2d 107, 125 (D.C.Cir.1974)]. Should we decide that either the agency or the court has a significant interest in postponing review, we will decline to hear the petitioner's claim at that time unless, under the "hardship to the parties" prong, the "interest of those who

seek relief from the challenged action's 'immediate and practical impact' upon them," [*Continental Air Lines*, 522 F.2d at 125], outweighs the competing institutional interest in deferring review.

*Eagle-Picher*, 759 F.2d at 915 (footnotes omitted). In other words, "the hardship prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency." *Payne Enterprises*, 837 F.2d at 493. *See also Consolidation Coal Co. v. Federal Mine Safety & Health Review Comm'n*, 824 F.2d 1071, 1081–82 (D.C.Cir.1987). Where there are no significant agency or judicial interests militating in favor of delay, "hardship" cannot tip the balance against judicial review, *see Payne Enterprises*, 837 F.2d at 493 n. 10; or, alternatively, when a case is clearly "fit" to be heard, the "hardship" factor is irrelevant in applying the ripeness doctrine, *see International Bhd. of Elec. Workers v. Interstate Commerce Comm'n ("IBEW v. ICC")*, 862 F.2d 330, 335 (D.C.Cir.1988).

Under the foregoing ripeness doctrine, we find that Askins' Eighth Amendment claim was properly dismissed as unripe, but that his First Amendment claim was ripe for review.

### 1. The Eighth Amendment Claim

■ The record in this case indicates that prison officials have yet to decide whether to transfer Askins to Central. The District Court was correct in its determination that the papers presented in support of the motions for summary judgment left no material factual dispute on this issue. The transfer decision clearly had not been made, and Askins submits no support for his allegations to the contrary. He merely asserts that a final decision had been made, but points to no evidence whatsoever. Accordingly, we refuse to overturn the District Court's factual determination on this point.

Without a final decision by the prison on the transfer, the "fitness" prong of the ripeness analysis cannot be met. Indeed, the situation before us is precisely the type of disagreement that is undesirable for litigation until the question that separates the parties arises in a more concrete and final form. No issue of law can be raised on the mere *possibility* of a transfer, no matter how dreaded that transfer may be to the prisoner. And, it is entirely possible that prison officials may decide not to transfer Askins at all, rendering litigation superfluous. We do not mean to suggest that there is no case or controversy between the parties, for there is one. Askins claims that he should not even be considered for transfer, whereas the prison officials say that Askins, like all other inmates, may be tested for his suitability for relocation. This is a real controversy, but it is not a *ripe* one (except in connection with the First Amendment claim).

Having found that there is a prudential reason to dismiss the case on grounds of ripeness, we must next consider whether such dismissal should be avoided on grounds that it will result in undue "hardship" to the appellant. Askins claims that he will suffer "hardship" because of the alleged threat to his life that will be posed if he is transferred to Central. If the case is delayed, Askins contends, he may be transferred before court review can be sought. Thus, he charges that from a practical standpoint, the case's current posture is his only chance for meaningful review.

We reject his hardship argument because it is clear that Askins would, in fact, be able to secure at least preliminary judicial review of his substantive challenge before any actual transfer. Even accepting Askins' allegations of potential harm as true for purposes of summary judgment analysis, *see Better Gov't Ass'n*, 780 F.2d at 94 (where ripeness issues and the merits are intertwined, a court must view any disputed facts vis-a-vis ripeness in a light most favorable to the party arguing for jurisdiction), it is nevertheless clear that if a determination is made to transfer Askins to Central, he will have ample opportunity for further judicial review on the merits. The record shows, without refutation, that, before being transferred, an inmate's case

is considered by the prison testing committee; then, when a decision is reached regarding an inmate's housing, the inmate is promptly advised of the committee's action, *see* Appendix of District of Columbia Appellees ("D.C.App.") 31; however, any decision of the committee is deemed only to be a recommendation that must be acted upon by the Institutional Administrator before the inmate is actually moved, *see id.* at 29. This procedure allows Askins time prior to any Administrator action to file for injunctive relief after the recommendation is made.

 Because prison officials have yet to decide whether to transfer Askins, and because Askins will have ample opportunity to challenge any such decision before it is effectuated, we affirm the judgment of the District Court dismissing Askins' Eighth Amendment claim as unripe. However, it is beyond cavil that the trial court had no authority to determine the merits of an unripe case. *See, e.g., Williams v. Barry,* 708 F.2d 789, 792 (D.C.Cir.1983). Thus, the District Court's dismissal of an unripe case *with prejudice* amounted to legal error. We therefore reverse and vacate the summary judgment in favor of the Government on the merits of Askins' Eighth Amendment claim. We instead dismiss without prejudice, so that if a decision is made to transfer him, Askins may then seek relief to block the transfer while his case is pending on the merits.

2. The First Amendment Claim

 The District Court also dismissed Askins' First Amendment claim as unripe, because it found that the First and Eighth Amendment claims were functionally interdependent. However, it appears that the trial court may have misconstrued these claims. We find that the First Amendment claim was independent of the Eighth Amendment claim, and we thus remand for consideration on the merits of the former.

The court apparently reasoned that without a ripe Eighth Amendment claim, Askins' First Amendment claim was grounded in no action that he had a "legal right to take." *Askins,* slip op. at 8. However,

Askins' First Amendment claim was not based on his Eighth Amendment right to avoid infliction of "cruel and unusual punishment," but on preservation of an alleged First Amendment right of access to the courts. Askins believed that the only way he could ensure access to the courts to challenge any decision on his transfer was to refuse to take the diagnostic test. Thus, he claims that his refusal was a valid exercise of this First Amendment right, for which he claims he cannot lawfully be sanctioned. He need not *prevail* on this claim in order for it to be *ripe.*

The decision of the appellees to *punish* Askins for his refusal to take the diagnostic test is final and complete. The penalty to Askins (time in punitive segregation) is real and pending. Execution of this punishment is only deferred pursuant to the outcome of this litigation. "Indeed, one is hard-pressed to imagine how [this] issue could arise in ... 'more ... final form.'" *IBEW v. ICC,* 862 F.2d at 335 (quoting *Eagle–Picher,* 759 F.2d at 915). Moreover, we can discern no interests, institutional or otherwise, weighing against immediate adjudication of this issue. Therefore, Askins' First Amendment claim is ripe, independent of the Eighth Amendment issues. The District Court never addressed Askins' First Amendment claim, and must do so.

III. Conclusion

We affirm the decision of the District Court dismissing Askins' Eighth Amendment claim as unripe; however, we hold that this claim should have been dismissed *without prejudice.* We also reverse and vacate the summary judgment in favor of appellees on the merits of the Eighth Amendment claim; we hold that the trial court had no authority to resolve the merits of an unripe case. Finally, we hold that the District Court erred in dismissing Askins' First Amendment claim for lack of ripeness; we remand the case for consideration of this claim on the merits.

*Reversed and remanded.*

SENTELLE, Circuit Judge, dissenting:

While I agree with much of the majority's opinion, I respectfully dissent from its conclusions. I join in all of the majority's analysis on ripeness and agree that the Eighth Amendment claim is wholly unripe, largely for the reasons the majority sets forth. My disagreement on the Eighth Amendment claim is largely a matter of semantics. I cannot agree that the District Court's dismissal of the Eighth Amendment claim with prejudice by way of summary judgment amounted to legal error. As the District Court viewed this matter, I think correctly, Askins could not prevail on an Eighth Amendment claim because "[p]laintiff cannot demonstrate that District officials acted with 'deliberate indifference' because they have not acted at all." *Askins v. District of Columbia*, Civil Action No. 87–2110, slip op. at 9 (D.D.C. Nov. 13, 1987).

As the majority notes, the lack of ripeness in the present case is not the sort that deprives this Court of jurisdiction in any constitutional sense. "We do not mean to suggest that there is no case or controversy between the parties, for there is one." Majority Opinion ("Maj. Op.") at 98. Nor is this a lack of ripeness that is evident from the face of the complaint. What puts the plaintiff out of court in this case is that he is unable "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The disclosure of such a defect in the plaintiff's case is precisely the office of a summary judgment motion under Rule 56(b) of the Federal Rules of Civil Procedure. When that rule is employed by motion of the defendant, and the plaintiff is unable to present support by way of affidavit or other acceptable evidence for an essential element of his claim, then the duty of the District Court is to do precisely what the District Court did here, that is enter judgment in favor of the defendant. Granted, this will bar the plaintiff from returning to court on the present claim. However, that is precisely what it should do. As the

Supreme Court taught us in *Celotex*, Rule 56 is designed to facilitate the vindication of "the rights of persons opposing ... claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327, 106 S.Ct. at 2555.

If plaintiff is later able to come to court with a claim for violation of his Eighth Amendment rights based on a transfer or some other new act, it will not be because any claim has ripened on the present facts but because new facts have developed since the granting of the summary judgment—because the District has "done something." The dismissal with prejudice of his claim on the present allegations upon which he could prove no right to relief could hardly then be taken to bar litigation based on new further events occurring after the grant of the dismissal. Therefore, while I agree with the majority that the claim is "unripe," I cannot join its conclusion that the unripeness is of a sort that precludes the dismissal on the merits, entered here by way of summary judgment.

As to the First Amendment claim, I would likewise affirm the dismissal by the District Court. While, concededly, incarcerated convicts retain First Amendment rights, *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987), Askins has not in the face of the Rule 56(b) motion produced any support for a claim that his First Amendment rights were violated. Askins' claim is based on convoluted reasoning that the prison by engaging in testing of him was curtailing his access to the courts. Otherwise put, he claims that he had a First Amendment right to interfere with the Prison Administrators' decision to test its inmates for "valid penological objectives," *O'Lone*, 482 U.S. at 348. This is patently frivolous. In the face of the summary judgment motion, Askins offered no support of any sort for the proposition that prison officials were improperly curtailing his access to the courts or any other First Amendment right. Again, I would affirm the judgment of the District Court.