**Richard Dale STOVER et al.**

v.

**Norman CARLSON, Director, United States Bureau of Prisons, et al.**

**Civ. No. B–75–290.**

United States District Court,
D. Connecticut.

April 29, 1976.

See also, D.C., 413 F.Supp. 724.

---

Richard Dale Stover, pro se; Jerome N. Frank Legal Service Organization, New Haven, Conn., for plaintiff.

Peter A. Clark, Asst. U. S. Atty., Jerimiah Donovan, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This lawsuit involves a broad challenge to the procedures employed by prison officials at the Federal Correctional Institution, Danbury, to distribute incoming inmate mail. The plaintiffs are in the custody of the United States Attorney General and are incarcerated at the Danbury facility. Jurisdiction is grounded on 28 U.S.C. § 1361 and 28 U.S.C. § 2241.

Three claims have been made concerning the prison mail-handling techniques. Plaintiffs contend, first, that staff at FCI, Danbury, frequently violate the Bureau of Prisons Policy Statement 7300.1A(6)(b) (Mar. 16, 1972) insofar as it requires mail from United States Courts, Members of Congress, and attorneys to be opened only in the presence of the addressee. Secondly, they argue that staff at FCI, Danbury, are violating the Policy Statement by opening mail from attorneys out of the presence of inmates unless it is specially marked with some legend identifying it as attorney-client mail. Thirdly, the plaintiffs argue that the Policy Statement itself violates their constitutional rights by permitting the opening outside the presence of the inmate of mail from the executive branches of the Federal Government and the states, from state courts, and from state legislators.

At a hearing on the merits it was established that mail coming to FCI, Danbury, is received in a mail room to which one or two officers are assigned on a rotating basis. An officer first screens the incoming mail to segregate all letters from United States Courts and Congressmen and envelopes bearing a legend identifying mail as attorney-client. Privileged letters are forwarded to an inmate's Case or Unit Manager who opens the envelope in the inmate's presence to search for contraband without reading the content of the mail. Non-privileged mail is slit open by machine outside the inmate's presence and randomly searched for contraband. Prison authorities claim not to read the contents of such mail.

## I.

The first dispute between the parties is the extent to which the specified mail-opening procedure is not followed, and whether departures are intentional or accidental. The government contends that occasionally mail from the privileged class is accidentally placed with the non-privileged mail and opened by machine out of the inmate's presence. Plaintiffs allege that these openings are purposeful and that the mail is read by prison officials before delivery.

 Whether the improper treatment of privileged mail is characterized as accidental or purposeful, a writ of mandamus may issue to compel a government officer to comply with a specific regulatory direction. *Harlem Valley Transp. Ass'n v. Stafford,* 500 F.2d 328, 334 (2d Cir. 1974); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1330 (2d Cir. 1974); *Feliciano v. Laird,* 426 F.2d 424, 429 (2d Cir. 1970). Bureau of Prisons Policy Statement 7300.1A(6)(b) imposes a specific duty upon prison officials: "Mail from U.S. Courts and Members of Congress *will be* opened and inspected only in the presence of the inmate, and only for the purpose of detecting enclosures constituting contraband." (emphasis added). Deviation from this standard is improper even when accidental. The inmate's Sixth Amendment right of access to the courts is "chilled" whatever may be the motivation for the opening of mail from courts by prison officials. See *Smith v. Robbins,* 328 F.Supp. 162, 165 (D.Me.1971), *aff'd in part, vacated in part,* 454 F.2d 696 (1st Cir. 1972). It is the fact of the opening outside the inmate's presence, not the official's motivation, that deters effective access to the courts. *Goodwin v. Oswald,* 462 F.2d 1237, 1245 (2d Cir. 1972); *Smith v. Robbins, supra,* 454 F.2d at 697.

 The Bureau of Prisons Policy Statement recognizes the significance of the fact of the opening outside the inmate's presence by imposing a mandatory duty upon prison officials. The mail room officer testified that during the Christmas peak mailing season the prison handled approximately 3,000 pieces of mail a day, but the plaintiffs contend that the yearly average is less than one-third that amount. There appear to have been over 100 improper openings before and during the pendency of this lawsuit. The Court is not convinced, even accepting the defendants' estimate of mail inflow, that the number of improper openings of privileged mail cannot be eliminated or greatly reduced to a truly unavoidable margin of inevitable mistake without unduly burdening the prison officials. A writ of mandamus will issue to compel the defendants to perform the duty owed to the plaintiffs. If compliance with the writ requires that an additional officer be placed in the mail room when mail is heavy or that the officer presently assigned be instructed to perform his duties more carefully, the burden on the defendants is not excessive. See *Bach v. Illinois,* 504 F.2d 1100, 1102 (7th Cir. 1974) (*per curiam*); *Gates v. Collier,* 501 F.2d 1291, 1320 (5th Cir. 1974).

## II.

 A closer question concerns the local practice of not placing mail from attorneys in the privileged category unless it bears a special marking, beyond the identification that appears from the return address. Bureau of Prisons Policy Statement 2001.-2B(10)(b) provides that "Correspondence addressed to an inmate by an attorney may be opened in the presence of the inmate solely for the purposes of inspection for physical enclosures constituting contraband." The regulation falls well within the constitutionally permissible surveillance of attorney-client mail. *Wolff v. McDonnell,* 418 U.S. 539, 576–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935, 962–63 (1974); *Morgan v. Montanye,* 516 F.2d 1367, 1372 (2d Cir. 1975), *rehearing en banc denied,* 521 F.2d 693; *cf. Inmates of Milwaukee County Jail v. Petersen,* 353 F.Supp. 1157, 1168 (E.D.Wis.1973). Testimony revealed that attorney-client mail is not treated as privileged unless it is specially stamped "attorney-client" by the sender. Yet the Bureau of Prisons regulation fails to put either the client or the attorney on notice that such a special marking is required in order to qualify the mail for privileged treatment.

■ There may be justification for the prison's practice of requiring a special indication that an attorney considers mail privileged, rather than merely treating every letter with an attorney's return address as *per se* privileged. *Cf. Marsh v. Moore,* 325 F.Supp. 392, 395 (D.Mass.1971). Traffic in contraband is proscribed by 18 U.S.C. § 1791, and the Bureau of Prisons may consider it appropriate to force an individual who is considering sending contraband under the guise of attorney-client mail to take one more affirmative step so that the individual may have one more opportunity to consider the gravity of his offense. Additionally, some communications between an individual who is an attorney and an inmate may not be subject to the privilege, and the Bureau of Prisons is certainly free to relieve some of its burden of special mail handling by placing the responsibility for identifying privileged communications upon the attorney. *Wolff v. McDonnell, supra,* 418 U.S. at 576–77, 94 S.Ct. at 2984–85, 41 L.Ed.2d at 962–63.

Presently, however, the Bureau of Prisons regulation fails to alert anyone to the necessity for special marking, which FCI, Danbury, is requiring. The regulation should be enforced as presently written, *i. e.,* all mail should be treated as privileged if it indicates on its face in any manner that it is sent "by an attorney." The return address of a sender identified as an attorney or a law firm is sufficient. More precise markings may not be required by a local institution, unless and until the Bureau of Prisons chooses to so specify in a new policy statement. Accordingly, a writ of mandamus will issue to compel the prison authorities to adhere to the present regulation.

### III.

Plaintiffs' third contention is that the categories of mail treated as privileged must be expanded to include mail from foreign officials, state and federal executive officials, state courts, and all local municipal officials and employees. Plaintiffs maintain that the First, Fifth, and Sixth Amendments protect these classes of mail

from being opened outside the presence of the inmate.

■ The contention that mail from state courts should be treated as privileged presents the most persuasive constitutional argument. The Sixth and Fourteenth Amendments protect the right of effective access to the courts. *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Adams v. Carlson,* 488 F.2d 619, 630–31 (7th Cir. 1973); *Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir. 1972); *Sostre v. McGinnis,* 442 F.2d 178, 200 (2d Cir. 1971); *Worley v. Bounds,* 355 F.Supp. 115, 118–19 (W.D.N.C.1973). When mail from any court is opened outside the presence of the inmate, and the inmate knows that such mail may be read by prison officials, the "chilling effect" on the right of access to the courts is substantial. See *Coleman v. Peyton,* 362 F.2d 905, 907 (4th Cir. 1966). The danger that an envelope bearing the return address of a state court will contain something other than legitimate mail from that court is not significant enough to justify the deterrent effect of the general opening of such mail outside the presence of the inmate. Applying the test enunciated by the Supreme Court in *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224, 240 (1974), to this constitutional problem, the Court finds that the exclusion of envelopes bearing the return address of a state court from the privileged classification furthers no substantial governmental interest of security, order, or rehabilitation while limiting Sixth Amendment freedoms significantly. Such mail must be opened only in the presence of the inmate. See *Adams v. Carlson, supra* at 631; *Smith v. Robbins, supra,* 454 F.2d at 697; *Carothers v. Follette,* 314 F.Supp. 1014, 1022 (S.D.N.Y.1970).

The remainder of plaintiffs' claims are less firmly anchored in the mainstream of currently enunciated constitutional doctrine. Justices Marshall and Douglas have eloquently argued that the First Amendment prohibits prison authorities from opening and reading any incoming and out-

going prisoner mail, *Wolff v. McDonnell, supra* 418 U.S. at 601, 94 S.Ct. at 2996, 41 L.Ed.2d at 976 (Douglas, J. dissenting in part); *Procunier v. Martinez, supra,* 416 U.S. at 422–429, 94 S.Ct. at 1815–19, 40 L.Ed.2d at 245–49 (Marshall, J. concurring and Douglas, J. concurring), but that view has not prevailed, *Procunier v. Martinez, supra* at 413, 94 S.Ct. at 1811, 40 L.Ed.2d at 240.

■ Whatever may be the scope of protection afforded incoming inmate mail in general by the First Amendment, the heavy reliance by the courts upon administrative procedures dictates, under the standards of *Procunier v. Martinez, supra,* that the channels of communications to and from those agencies with important and immediate responsibility for the fact of an inmate's incarceration remain entirely free of prison staff surveillance, except for the minimum intrusion of opening in the inmate's presence to check for contraband without reading contents.[1] Thus, correspondence with the Department of Justice or state and local prosecuting authorities is as intimately related to the right of access to the courts as is correspondence with a private attorney. A prisoner may be involved in negotiations with a government attorney concerning past or future prosecutions, or may be complaining to some official in the Justice Department concerning conditions at the prison. Opening of mail from Justice Department personnel or other prosecuting officials outside the presence of the inmate effectively chills access to a governmental entity that is intimately related to the administration of justice. Indeed, other prison officials have recognized the prisoner's interest in the integrity of such communica-

tion and amended mail regulations to provide that such communication may only be screened for contraband in the inmate's presence. *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir. 1975); *Bach v. Coughlin,* 508 F.2d 303, 307 (7th Cir. 1974); *Lake v. Lee,* 329 F.Supp. 196 (S.D.Ala.1971). Mail with a Department of Justice return address or the return address of a state or local prosecutor may not be opened outside the presence of the inmate.

■ Similarly, a prisoner has an immediate interest in communications from a governor since these communications will often deal with extradition problems. A governor has the power to reach a decision that will immediately affect the inmate's incarceration and therefore mail bearing a state governor's return address may not be opened outside the inmate's presence.

■ Communications with foreign embassies also directly concern a prisoner's incarceration. In the case of a foreign national detained in federal custody, that individual surely has a right to communicate with his government in order to persuade it to take some official action on his behalf. Consequently, mail from a foreign embassy may not be opened outside the presence of the inmate, lest the inmate be afraid to engage in such correspondence for fear that prison officials will take some action against the inmate because of the contents of some letter.

■ However, the balance indicated by *Procunier v. Martinez, supra,* is not met as to mail from federal, state, or local agencies with no obvious relationship to the inmate's incarceration. To the extent plaintiffs seek to require mail from these agencies to be

---

1. Judge Oakes has recently urged that our Circuit re-examine *Sostre v. McGinnis,* insofar as it grants prison authorities power to interfere with inmate's attorney-client mail. *Morgan v. Montanye, supra,* 521 F.2d 693 (Oakes, J. dissenting from denial of rehearing *en banc*). Yet even *Sostre* recognizes that *"Sui generis* in both logic and the case law, however, are letters addressed to courts, public officials, or an attorney when a prisoner challenges the legality of either his criminal conviction or the conditions of his incarceration. . . . It would be

inappropriate on constitutional grounds, ironic, and irrational to permit drastic curtailment of constitutional rights in the name of punishment and rehabilitation, while denying prisoners a full opportunity to pursue their appeals and postconviction remedies. The general scope of discretion accorded prison authorities also heightens the importance of permitting free and uninhibited access by prisoners to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." *Id.* at 200.

opened in their presence, · the request is denied.

 Accordingly, a writ of mandamus will issue directing the warden of the Federal Correctional Institution at Danbury and those officials acting under his supervision (1) to adhere to Bureau of Prisons Policy Statement 7300.1A(6)(b) (Mar. 16, 1972) insofar as it requires mail from United States Courts, Members of Congress, and attorneys to be opened only in the presence of the inmate addressee, (2) to include within this privileged category of mail any letter that indicates on its face in any manner that it is sent by an attorney, including a letter with a return address identifying the sender as an attorney or a law firm, and (3) to include within the category of privileged mail that can be opened only in the presence of the inmate addressee any mail indicating on its face that the sender is a state court or official thereof, the United States Department of Justice or state or local prosecutor's offices, or official thereof, the office of a state governor or official thereof, or the embassy or consulate of a foreign country or official thereof.[2]

---

**2.** Relief in this third category is to redress a constitutional, rather than a regulatory violation, and mandamus is available to grant relief against prison officials in this situation. *Kahane v. Carlson,* 527 F.2d 492 (2d Cir. 1975).

In any event, habeas corpus jurisdiction is sufficient for injunctive relief, and clarity is achieved by including all three grants of relief in one order.