Ronald THORNLEY, Plaintiff,

v.

C.R. EDWARDS, Warden, U.S.P.,
Lewisburg, PA, Defendant.

Civ. No. 86–1503.

United States District Court,
M.D. Pennsylvania.

March 20, 1987.

Ronald Thornley, pro se.

Barbara L. Kosik, Asst. U.S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Ronald Thornley, a prisoner at the U.S. Penitentiary at Lewisburg, PA (Lewisburg), filed a Request for Mandamus and a request to proceed *in forma pauperis* on October 22, 1986. Thornley alleged that prison officials "on a daily basis, open [outside the presence of the addressee/inmate] all incoming mail, clearly marked as originating from United States Courts, State and Municipal Courts, United States Department of Justice, and Department of State Attorney Generals." Document 1 of the record at p. 2. He further asserted that legal mail is opened by an automatic device which at times damages the envelope's contents. He requested injunctive relief compelling prison officials to cease this practice.

Magistrate Joseph F. Cimini filed a Report in this case on January 9, 1987. He recommended that on the basis of financial information submitted, Thornley be permitted to proceed *in forma pauperis*. After noting that Thornley has exhausted his administrative remedies and that the court has jurisdiction over this matter under 28 U.S.C. § 1361, the Magistrate recommended summary dismissal of the action. He concluded that Thornley's mandamus request is frivolous as a matter of law in light of the regulations set forth at 28 C.F.R. §§ 540.18 and 540.19. On January 26, 1987, Thornley filed Exceptions in which he argued that the opening of his legal mail outside his presence violates his constitutional right of free access to the courts.

For the reasons set forth below, the court determines that Thornley's allegation that prison officials open his legal mail outside his presence states a colorable vio-

lation of his sixth amendment right of free access to the courts. This case will be remanded to Magistrate Cimini to determine, by a rule to show cause or otherwise, whether any factual disputes exist and to recommend a proper disposition.

## ANALYSIS

■ The relevant regulations of the Bureau of Prisons, 28 C.F.R. §§ 540.18 and 540.19, read as follows:

§ 540.18 Special mail.

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately indentified on the envelope, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate."

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect and read the mail....

§ 540.19 Legal correspondence.

(a) Staff shall mark each envelope of incoming mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

(b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate." Legal mail shall be opened in accordance with special mail procedures (see § 540.-18).

(c) Grounds for the limitation or denial of an attorney's correspondence rights or privileges are stated in Part 543, Subpart B. If such action is taken, the Warden shall give written notice to the attorney and the inmate affected....

(e) Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section, and must be marked on the front of the envelope as being mail from the attorney or from the legal aid supervisor.[1]

The above regulations indicate that "special mail" is opened in the inmate's presence. Correspondence qualifies as "special mail" only if it meets two requirements: (1) the sender is adequately identified on the envelope and (2) the "special mail" marking is inscribed on the front of the envelope. Legal mail is opened in the presence of the inmate only if it satisfies the criteria for "special mail."[2]

[1]. The portions of the regulations which are omitted deal with outgoing mail. In the present action, Thornley complains only about the procedures for handling incoming legal mail at Lewisburg.

In addition to the above regulations, see the Bureau of Prisons' Program Statement 5265.8.

[2]. In his response to Thornley's BP–DIR–10, the Regional Director explained:

You appeal institution staff opening your mail from the U.S. Courts without your being present. Mail received from the U.S. Courts will be handled as special mail if the envelope is properly marked, "Special Mail—Open Only in the Presence of the Inmate." In the absence of this statement on the envelope, it is assumed that the sender does not claim any privilege for that type mail and, therefore, the envelope may be opened, inspected and delivered to you through normal channels.

The General Counsel reiterated this view in replying to Thornley's BP–DIR–11:

You claim that your court mail should not be required to have the marking "Special mail—Open only in the presence of the inmate" in order to receive special handling and be opened in your presence.... If you want your court mail handled in this way, you should ask the court to put the required marking on the envelope. In the absence of the

Prior to the adoption of §§ 540.18 and 540.19, case law had recognized that opening prisoners' legal mail outside of their presence chills their constitutional right of free access to the courts. For example, in *Carty v. Fenton*, 440 F.Supp. 1161 (M.D. Pa.1977) (Muir, J.), the court ordered the Warden at Lewisburg and the Director of Prisons to refrain from opening the petitioner's mail from state or local courts or the U.S. Department of Justice. Prison officials had maintained that federal prisoners' mail from state courts is not legal mail and should be processed as regular mail. The court responded:

> [I]t is high time that some General Counsel for the Bureau or some competent assistant reexamine all current Bureau of Prisons policies with a copy of the United States Constitution in hand.... Whether or not a prisoner is involved in ... pending state actions, the constitutional guarantee of due process of law requires that prisoners be afforded access to the Courts [citation omitted]. Opening mail from state courts, Justice Department personnel and other prosecuting officials outside the presence of the inmate effectively chills access to the courts or a governmental entity that is intimately related to the administration of justice. No governmental interest in security or otherwise warrants this infringement of Sixth Amendment rights.

440 F.Supp. at 1162–63. The court concluded that it was confident that the U.S. Supreme Court would condemn the practice of opening prisoners' legal mail outside their presence as an infringement of the Constitution. *Id.* at 1163.

Similarly, the court in *Stover v. Carlson*, 413 F.Supp. 718 (D.Conn.1976), issued a writ of mandamus directing prison officials at F.C.I.–Danbury, Conn. not to open legal mail outside the presence of the addressee/inmate. Legal mail was defined as correspondence from U.S. courts, attor-

neys, state courts, the U.S. Department of Justice, local prosecutors or state or foreign government officers. The court stated, "When mail from any court is opened outside the presence of the inmate, and the inmate knows that such mail may be read by prison officials, the 'chilling effect' on the right of access to the courts is substantial." 413 F.Supp. at 722. The motivation of prison officials is irrelevant, *i.e.*, "[i]t is the fact of the opening outside the inmate's presence, not the official's motivation, that deters effective access to the courts." *Id.* at 721. The court also pointed out that the danger that legal mail which bears the name and return address of the sender may contain contraband is minimal and does not justify the general opening of such mail outside the presence of the addressee. *Id.* at 722. Thus, the court concluded that opening legal mail outside the presence of the prisoner "furthers no substantial governmental interest of security, order, or rehabilitation while limiting Sixth Amendment freedoms significantly." *Id.* Legal mail, therefore, "must be opened only in the presence of the inmate." *Id.* [3]

For other relevant cases on this issue, see *Wolff v. McDonnell*, 418 U.S. 539, 576–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974) (Court approved scheme which required attorneys to mark their names and addresses on letters sent to their imprisoned clients and which permitted prison officials to open this correspondence in the presence of the addressee); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (censorship of inmate mail is justified only if (1) it furthers an important and substantial government interest in security, order or rehabilitation and (2) it is no greater than necessary to further the legitimate government interest involved; the decision to censor or withhold delivery of inmate mail must be accompanied by procedural safeguards against arbitrariness and error); [4] *Ramos v. Lamm*,

---

marking, it is assumed that the court is not requesting special handling for the mail.

**3.** Some of the above-cited comments from the *Stover* opinion were made during the court's analysis of mail sent by state courts, but these

remarks are equally applicable to all incoming legal mail.

**4.** The *Wolff* and *Procunier* decisions are distinguishable from the present case in that they address general inmate correspondence—a

639 F.2d 559, 582 (10th Cir.1980) (held as unduly restrictive a regulation which limited privileged mail to correspondence between an inmate and any public official, agency or lawyer which dealt with the inmate's conviction or complaints concerning the administration of the prison); *Guajardo v. Estelle,* 580 F.2d 748, 757–59 (5th Cir.1978) (incoming mail from attorneys, courts and government agencies can be opened and inspected for contraband only in the presence of the inmate); *Intersimone v. Carlson,* 512 F.Supp. 526 (M.D.Pa. 1980) (Herman, J.) (reiterated the two-prong test for censorship of prisoner mail from *Procunier v. Martinez, supra* ); *Laaman v. Helgemoe,* 437 F.Supp. 269, 322 (D.N.H.1977) (correspondence from lawyers, courts and government officials must be opened in the presence of the inmate); and *Craig v. Hocker,* 405 F.Supp. 656, 667 (D.Nev.1975) (incoming mail from courts and attorneys "may be opened in the presence of the prisoner for the detection of contraband, but cannot be read or censored by the prison officials").[5]

In his Report, the Magistrate noted that 28 C.F.R. §§ 540.18 and 540.19 were promulgated after the above-cited cases were decided.[6] Nonetheless, these cases clearly establish that opening legal mail outside the presence of the addressee/inmate chills his sixth amendment right of free access to the courts. The regulations cannot diminish this constitutional right.[7]

■ The regulations in question attempt to add one prerequisite to the established right of federal prisoners to have their legal mail opened in their presence—§§ 540.18 and 540.19 require any entity sending legal mail to a prisoner to mark the envelope "Special Mail—Open only in the presence of the inmate." The court is unable to discern any significant interest which is enhanced by placing this additional burden on the court or legal counsel. Once the sender of legal mail has been clearly identified, the danger of contraband or improper communications is minimal, and the risk of contraband is eliminated by opening legal mail in the inmates' presence. The "special mail" marking simply does not further security, order or any other important government interest. The only purpose served by the additional requirement appears to be administrative convenience—legal mail is not automatically opened in the inmate's presence under the regulations. This convenience factor is of minimal significance and is offset, at least in part, by the inconvenience caused to the entities which send legal mail to prisoners, such as courts, since these enti-

much broader focus than just incoming legal mail—and utilize a first amendment analysis.

5. *But see Myers v. Bureau of Prisons,* No. 86–1573 (M.D.Pa. Feb. 5, 1987) (Herman, J.) [Available on WESTLAW, DCT database]. There, the court faced a situation which is nearly identical to the present dispute. The court adopted a report prepared by Magistrate Cimini which recommended dismissal of the petitioner's request for a writ of mandamus to alter the procedures at Lewisburg for handling incoming legal mail. In a two-page order without an opinion, the court ruled that the petitioner failed to exhaust his administrative remedies and that the petition was frivolous insofar as it challenged existing regulations on inmate legal mail.

6. Sections 540.18 and 540.19, formerly 28 C.F.R. §§ 540.17 and 540.18, respectively, were first proposed at 42 Fed.Reg. 26334, *et seq.* (May 23, 1977). They became effective as final rules on Aug. 1, 1980. 45 Fed.Reg. 44229, *et seq.* (June 30, 1980). The last sentence in § 540.19(a)—which requires the "special mail" marking for legal mail to be treated as "special mail" and opened in the inmate's presence—was added on

Nov. 1, 1985. 50 Fed.Reg. 40104, *et seq.* (Oct. 1, 1985).

The Magistrate indicated in his Report that he was unable to find any case law which addressed the constitutionality of §§ 540.18 and 540.19. Document 30 at p. 9. Except for the order in *Myers v. Bureau of Prisons, supra* at note 5, the court's research likewise leads to the conclusion that this is a case of first impression.

7. In his Report, the Magistrate proposes that §§ 540.18 and 540.19 do not chill prisoners' access to the courts since most documents sent by courts to federal prisoners are matters of public record. Document 30 at p. 12 n. 2. First, Thornley has not claimed any privacy interest in his incoming legal mail; he has only asserted that his right of free access to the courts has been infringed upon. Second, not every document sent by this court to a federal prisoner is a matter of public record, and prison staff can obtain any public document from a prisoner's case by contacting the court rather than via the prisoner's mail.

ties must now review every document to determine if any matters contained therein are worthy of the protections afforded to "special mail."

■ The additional requirement of a "special mail" marking also has a potential chilling effect upon federal prisoner's sixth amendment right of free access to the courts. In short, the prisoner does not have ultimate control over whether the "special mail" marking will appear on his incoming legal correspondence. The possibilities exist that the sender will not be aware of this requirement, will forget to place the "special mail" marking on the envelope or will fail to recognize the prisoner's expectation of or the need for confidentiality. Since the sender ultimately controls whether legal mail bears the "special mail" marking, the prisoner inevitably faces the possibility that his legal mail will not be marked as "special mail" and will be opened outside his presence.[8] Prisoners' constitutional right of free access to the courts is meaningful only if it provides them reasonable assurances that their legal mail will not be opened and read before it reaches them.

In conclusion, the requirement that legal mail be identified as "special mail" does not serve any significant purpose, and it poses a threat of chilling federal prisoners' right of free access to the courts. The court, then, determines that the practice authorized under 28 C.F.R. §§ 540.18 and 540.19 of requiring a "special mail" marking in order that legal mail be opened in the presence of the addressee/inmate affronts the Sixth Amendment.

The court will grant Thornley leave to proceed *in forma pauperis,* will direct that a copy of his Request for Mandamus and of this Memorandum and Order be served upon the Warden at Lewisburg, and will remand this case to the Magistrate to determine, by a rule to show cause or other-

wise, whether any factual disputes exist over the method of handling prisoners' incoming legal mail at Lewisburg and to thereafter recommend a proper disposition of this case.

An appropriate Order will enter.

---

8. The Magistrate relied upon a suggestion in *Stover v. Carlson, supra* at 722, that the Bureau of Prisons could place responsibility for identifying privileged communications upon the attorney. Document 6 at p. 10. This suggestion, in addition to being dicta, was limited to mail from attorneys. Thornley does not complain about the opening of his mail from attorneys. Moreover, the suggestion in question does not remedy the concern that prisoners' right to free access to the courts may be chilled since they do not have ultimate control over whether the "special mail" marking appears on their incoming legal mail.