Rakim A. MUHAMMAD,
Plaintiff–Appellee,

v.

Terry A. PITCHER; Dorothy Stiller; and
Laura Siers, Defendants–Appellants.

No. 92–2364.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 5, 1993.

Decided Sept. 21, 1994.

Rakim A. Muhammad, pro se.

Daniel E. Manville, Detroit, MI (argued and briefed), for plaintiff–appellee.

Chester S. Sugierski, Jr., Linda M. Olivieri (argued and briefed), Office of Atty. Gen., Corrections Div., Lansing, MI, for defendants–appellants.

Before: LIVELY, JONES and SILER, Circuit Judges.

JONES, J., delivered the opinion of the court, in which LIVELY, J., joined. SILER, J. (pp. ——–—— ), delivered a separate dissenting opinion.

NATHANIEL R. JONES, Circuit Judge.

In this 42 U.S.C. § 1983 civil rights action, Plaintiff–Appellee Rakim A. Muhammad, an inmate at the Standish Correctional Facility in Michigan, challenges Michigan Department of Corrections' (MDOC) policy of treating inmate mail from the State Attorney General's Office as ordinary mail rather than as confidential legal mail. The district court found the policy to be unconstitutional. We affirm.

## I

On September 17, 1991, pursuant to MDOC policy directive BCF–63.03, Muhammad formally requested that prison staff open all of his legal mail only in his presence. Policy directive BCF–63.03 provides that, although *ordinary* incoming mail "shall be opened and inspected for money or contraband prior to delivery to the prisoner," *legal* mail is to be treated differently:

> Upon written request by a prisoner to the institution's mail room supervisor, mail which is clearly designated as being from the prisoner's designated attorney, the courts, or from the Legislative Correctional Ombudsman, shall be opened and inspected for contraband in the prisoner's presence.

Similarly, MDOC policy directive DWA–61.01 provides:

> A prisoner shall also have the right to carry on confidential and uncensored correspondence with his/her attorney, the courts and legal assistance organizations such as the American Civil Liberties Union, the State Appellate Defender's Office and Prison Legal Services.

Despite Muhammad's request, on October 9, 1991, Defendants–Appellants Dorothy Stiller, the prison's Mail Room Supervisor, and Laura Siers, a prison employee working in the mailroom, opened mail addressed to Muhammad that was clearly marked as coming from State Attorney General Frank Kelley. It turned out that the envelope that Defendants opened contained no confidential correspondence.

Stiller and Siers opened the letter from the Attorney General pursuant to a memorandum from Marjorie Van Ochten, Administrator of MDOC's Hearings Division, dated February 7, 1991. The memo stated that "mail to a prisoner from the Attorney General's Office need *not* be treated as legal mail and thus confidential." J.A. at 57. The express basis for this policy is that "[s]ince the Attorney General's Office (or a prosecutor) represents the State, there is no requirement of confidentiality in correspondence with the Attorney General or prosecutors." *Id.*

Muhammad filed the present suit *pro se*, requesting damages, an injunction, and a declaratory judgment. Both parties filed motions for summary judgment.[1] The district court appointed counsel for plaintiff, and, after holding a hearing, granted partial summary judgment to Defendants on the issue of the availability of damages,[2] and granted partial summary judgment awarding declaratory relief to Plaintiff. The court ruled that Defendants' practice—that of opening outside of Plaintiff's presence properly marked mail addressed to Plaintiff from the Attorney General's Office—was unconstitutional. This appeal followed.

## II

"We review a district court's grant of summary judgment *de novo* .... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

### A

■ Defendants' first contention on appeal is that Muhammad has no interest in maintaining confidentiality regarding mail from the Attorney General, and consequently has no right to have mail from the Attorney General's Office opened in his presence. In the court below, Defendants emphasized that the Attorney General's Office represents the prison and so is adverse to the inmates. Similarly, in their brief on appeal, Defendants find it "difficult to imagine what confidentiality Plaintiff can claim in mail sent to him by the Attorney General, acting as opposing counsel in litigation initiated by Plaintiff." Defendants Br. at 8.

---

1. Defendants are represented by the Corrections Division of the State Attorney General's Office.

2. This issue is not before the court on appeal.

This statement indicates a surprising lack of imagination. As the district court and Plaintiff point out, the Attorney General's Office frequently serves prisoners in the very same way that legal assistance organizations such as the State Appellate Defender's Office and Prison Legal Services do. An inmate may correspond with the Attorney General for many reasons: to inquire about legal remedies, to negotiate about future prosecutions, to complain about prison conditions, etc. Indeed, many divisions in the Michigan Attorney General's Office—including Civil Rights and Civil Liberties, Consumer Protection, Criminal, Environmental Protection, Mental Health, Public Health—could take action on behalf of an inmate, or on behalf of the state based upon information provided by an inmate, even against MDOC or its employees.

Defendants also argue that even if Plaintiff's mail *to* the state Attorney General's Office is entitled to legal mail status, mail coming back *from* this office is not. They contend that most of the documents sent from the Attorney General's Office are public documents available to anyone. This argument is meritless. It takes very little imagination to realize that any response from the Attorney General to a confidential inquiry may well be sensitive and confidential itself.

The conclusion that mail from an attorney general to an inmate may be confidential should not be surprising, for courts have consistently recognized that "legal mail" includes correspondence from elected officials and government agencies, including the offices of prosecuting officials such as state attorneys general. *See Ramos v. Lamm,* 639 F.2d 559, 582 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Guajardo v. Estelle,* 580 F.2d 748, 758 (5th Cir.1978); *Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976); *Faulkner v. McLocklin,* 727 F.Supp. 486, 490 (N.D.Ind. 1989); *Thornley v. Edwards,* 671 F.Supp. 339, 341 (M.D.Pa.1987); *Carty v. Fenton,* 440 F.Supp. 1161, 1163 (M.D.Pa.1977); *Laaman v. Helgemoe,* 437 F.Supp. 269, 322 (D.N.H. 1977); *Stover v. Carlson,* 413 F.Supp. 718, 723 (D.Conn.1976); *Preston v. Cowan,* 369 F.Supp. 14, 23 (W.D.Ky.1973), *aff'd in part*

*and vacated in part on other grounds,* 506 F.2d 288 (6th Cir.1974). We can find no case that reaches a contrary conclusion.

The *Stover* case is directly on point. A group of inmates at the Federal Correctional Institute in Connecticut argued that mail to an inmate from federal, state, or local prosecuting authorities should be treated as confidential legal mail. 413 F.Supp. at 723. The court agreed, holding that such mail "is as intimately related to the right of access to the courts as is correspondence with a private attorney." Opening such mail outside of an inmate's presence "effectively chills access to a governmental entity that is intimately related to the administration of justice." *Id.* The court in *Carty,* 440 F.Supp. at 1163, reached the same conclusion.

Similarly, the Federal Bureau of Prisons mandated that Department of Justice mail to federal prisoners, including mail from U.S. attorneys, is to be treated as legal mail, unless the mail is from the Bureau of Prisons itself. 28 C.F.R. § 540.2. Even MDOC itself defines "legal mail" to include mail sent to government officials. Administrative Rule 791.6603(6).

Therefore, correspondence from the Attorney General's Office is no different than correspondence from any other legal assistance organization that MDOC already treats as legal mail. As the district court held, "a prisoner has a fundamental interest in maintaining the confidentiality of such correspondence." J.A. at 142.

**B**

■ Defendants' second contention on appeal is that, because the actual piece of mail that they opened was not itself confidential, Muhammad has failed to prove that he suffered any actual prejudice. This argument, however, overlooks the chilling effect that the challenged policy has on inmates who desire to correspond confidentially with the state Attorney General. As the district court explained, "a prisoner who suspects that a grievance may not remain confidential may fear retaliation by a corrections officer." J.A. at 143. Consequently, the court held:

that the actual contents of the letters opened by defendants and the number of lawsuits that Muhammad has filed are irrelevant to the constitutionality of the practice of opening mail addressed to Muhammad from the Attorney General outside his presence. The chilling effects described [in the quote above] are simply not addressed, and clearly not dispelled, by the defendants assertions.

J.A. at 164.

We agree with this analysis. "It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact." *G & V Lounge v. Michigan Liquor Control Commission*, 23 F.3d 1071, 1076 (6th Cir.1994); *accord NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").

The actual prejudice suffered by Muhammad arises, not because the specific envelope opened by Defendants happened to have any intrinsic importance, but rather because MDOC's policy of opening mail from the Attorney General is a general policy that, but for the declaratory relief afforded by the present litigation, would apply to confidential and non-confidential Attorney General correspondence alike. The MDOC has stated unequivocally that "there is *no* requirement of confidentiality in correspondence with the Attorney General." J.A. at 57 (memo from Hearings Division Administrator). This implies that mail from the Attorney General is *never*, under any circumstances, to be treated as legal mail.

This understanding of MDOC policy is borne out by Stiller's affidavit, in which she explains that MDOC's policy is *always* to treat mail from the Attorney General's Office as ordinary mail, even if an inmate expressly notifies the mailroom that a particular piece of mail is confidential. J.A. at 50. Indeed, throughout this litigation, Defendants have never pretended that MDOC has any intention of trying to treat confidential mail from the Attorney General's Office any differently than it treats non-confidential correspondence.

In short, then, under MDOC's policy, Muhammad reasonably expects his mail from the Attorney General to be opened outside of his presence. Without declaratory relief from the court, this reasonable expectation could chill Muhammad from turning to the Attorney General's Office under circumstances in which the office could otherwise be of service. Thus, the MDOC policy constitutes a roadblock upon an otherwise legitimate avenue for the redress of an inmate's legal problems or grievances. *See, e.g., Stover*, 413 F.Supp. at 723, 725; *Carty*, 440 F.Supp. at 1163.

## III

The Supreme Court has instructed that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The *Turner* Court reviewed four factors that are relevant in determining the reasonableness of a challenged prison regulation. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* If not, the regulation is unconstitutional, and the other factors do not matter. *Id.* at 89–90, 107 S.Ct. at 2262. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 90–91, 107 S.Ct. at 2262. The Court has stressed that *Turner's* "reasonableness standard is not toothless." *Thornburgh v. Abbott*, 490 U.S. 401, 414, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989).

■ It is well settled that "[a] prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d

996, 1012 (6th Cir.1992) (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), and *Parrish v. Johnson,* 800 F.2d 600, 603 (6th Cir.1986)), *cert. denied,* — U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). Thus, the conduct that is challenged in the present case—that of treating mail sent from the state attorney general as ordinary mail rather than legal mail—burdens Plaintiff's First Amendment rights. It follows that *Turner* governs the present case. *See Thornburgh,* 490 U.S. at 413–14, 109 S.Ct. at 1882 (holding that *Turner* governs challenges to regulations regarding incoming prisoner mail); *Knop,* 977 F.2d at 1012 (applying *Turner* to a challenge to regulations regarding incoming prisoner mail); *Martucci v. Johnson,* 944 F.2d 291, 295–96 (6th Cir.1991) (same). *See also Brewer v. Wilkinson,* 3 F.3d 816, 824–25 (5th Cir.1993) (holding that *Turner* governs claims pertaining to prisoners' access-to-courts claims arising from prison's opening incoming legal mail out of the addressee's presence), *cert. denied,* — U.S. ——, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

Applying *Turner* to the present case, we must determine whether MDOC's policy— that of treating mail sent to an inmate from the state Attorney General as ordinary mail rather than legal mail—is reasonably related to legitimate penological objectives. *See Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62. All four of the *Turner* factors indicate that the policy does not pass muster.

With regard to the first factor, it is up to Defendants to advance a legitimate and neutral governmental interest to which MDOC's policy is rationally connected. Defendants assert only that its interest is in conserving finite resources:

> It is no secret that a substantial amount of mail issues daily from the Attorney General's Office addressed to inmates. To require that all of this mail receive special handling with no claim, much less any

evidence that the current procedure hinders access to the courts is an unwarranted waste of resources.

Defendants Reply Br. at 2–3.

However, there is no evidence in the record supporting Defendants' factual claim that the Attorney General's Office sends a substantial amount of mail to inmates. There is no evidence that a substantial number of inmates are inclined to submit written requests asking that legal mail, including mail sent from the Attorney General's Office, be opened only in their presence. Moreover, Defendants offer no evidence that it would cost anything more to have the inmates who make such requests present when their mail from the Attorney General's Office is opened than it costs to open this mail outside of the inmate-addressees' presence. In light of the fact that the prison is already opening legal mail from private attorneys, courts, and legal assistance organizations in the presence of the inmates who submit such requests, it seems to us that opening mail from the Attorney General's Office in the presence of these inmates would entail little or no additional burden. Thus, in the absence of any evidence to the contrary, we conclude that, if treating mail from the Attorney General as legal mail would cost anything at all, the difference would only be *de minimis.*[3] Therefore, the government's legitimate interest in not wasting resources is not rationally related to the policy at issue.

With regard to the second factor, Defendants argue that Plaintiff has an alternative way of gaining access to the courts—he files lawsuits. This argument misses the point entirely. Of course, the challenged policy does not chill Plaintiff from filing traditional lawsuits, but it does chill him from corresponding with the Attorney General, which thereby blocks a legitimate avenue for the redress of Plaintiff's grievances. Plaintiff has no alternative means of communicating confidentially with the Attorney General.

---

3. If, however, it happens that there are a significant number of inmates in Michigan prisons who correspond heavily with the Attorney General and who wish this correspondence to be confidential, yet who do not already correspond heavily with private attorneys, courts, or other legal assistance organizations, then whatever additional burden would be imposed by opening mail from the Attorney General in the presence of these inmates would be well justified; it is precisely such inmates who most need the protection that would be afforded by treating incoming mail from the Attorney General as legal mail.

With regard to the third factor, Defendants argue, once again, that if they accommodate Plaintiff, it will waste valuable resources. As indicated above, in the absence of any evidence to the contrary, the expense of accommodation appears to be *de minimis.*

With regard to the fourth factor, the parties agree that there are no alternatives available to protect Plaintiff's rights other than simply abandoning the policy and treating mail from the Attorney General's Office as legal mail. This is, of course, the alternative that Plaintiff seeks, and it is indeed a ready alternative, available at *de minimis* cost, that fully accommodates Plaintiff's rights. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner,* 482 U.S. at 91, 107 S.Ct. at 2262.

All four factors, then, indicate that the policy at issue is not reasonably related to the only valid penological interest set forth by MDOC. Under *Turner,* then, the policy is unconstitutional.

## IV.

For the foregoing reasons, we affirm the decision of the court below.

SILER, Circuit Judge, dissenting.

The issue in this case is whether the plaintiff, Rakim A. Muhammad, has a constitutional right to be present when prison officials open mail sent to Muhammad from the Attorney General of Michigan. I dissent because I do not think that Muhammad has shown a constitutional violation in this case.

First, it is necessary to determine which constitutional provision is implicated. The majority opinion indicates that Muhammad's First Amendment rights were "chilled" when mail from the Attorney General was opened outside his presence. On the other hand, the district court found that MDOC's practice of opening incoming Attorney General mail violated Muhammad's "right of access to the court," without citing a particular part of the Constitution. Perhaps it was referring to

the Fourteenth Amendment due process rights. *See Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). The district court mentioned that Muhammad was raising First Amendment rights, but it did not determine that claim because it decided that Muhammad's "right of access to the court" was violated. Whether it is analyzed under the First Amendment or the Fourteenth Amendment, I would not find a constitutional violation. Instead, I would follow the decision in *Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994), which held that a prisoner's constitutional rights are not violated when his incoming legal mail is opened and inspected outside his presence. *Accord Walker v. Navarro County Jail,* 4 F.3d 410, 413 (5th Cir.1993).

Some of the facts in this case need to be emphasized. First, there is no allegation that MDOC opened or censored any mail *from* Muhammad. Second, although the district court referred to the reading of the incoming mail by prison officials, Muhammad does not allege that prison officials in this case read mail from the Attorney General nor did he raise the issue of whether they could read such mail. Third, the mail in question here is limited to that from the Attorney General, who has never had a lawyer-client relationship with Muhammad. All of the mail from the Attorney General was related to actions filed by Muhammad against MDOC, in which the Attorney General served as opposing counsel. Muhammad has not identified the circumstances under which the Attorney General could ever have an attorney-client privilege with him. Additionally, there is no question of censorship of incoming mail as found in *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

Initially, I question whether this issue of prison officials' opening *confidential* incoming mail from the Attorney General is ripe for judicial resolution because "a final decision by the prison" is lacking. *Askins v. District of Columbia,* 877 F.2d 94, 98 (D.C.Cir.1989). The Van Ochten memorandum, referred to in the majority opinion,

concludes that mail from the Attorney General is not confidential, but does so on the premise that the Attorney General represents the state, not the prisoner. Ordinarily, the Attorney General represents interests contrary to those held by prisoners. Even the majority opinion does not suggest that the Attorney General would ever represent the plaintiff, but might respond to some type of inquiry by the prisoner to that office. Nevertheless, the defendant prison officials have indicated that if the Attorney General wanted to send a confidential letter to a prisoner, "he could easily indicate on the outside of the letter that the material was to be opened in the presence of the prisoner." They implied the request would be honored. Here, the only correspondence which Muhammad had with the Attorney General was in an adversarial relationship, which involved the mailing of documents such as pleadings in civil rights cases. It is not appropriate for the court to consider this matter until such time as Muhammad's right to a letter marked "Confidential" by the Attorney General has been subject to opening outside his presence.

This case presents "the type of disagreement that is undesirable for litigation until the question that separates the parties arises in a more concrete and final form." *Askins,* 877 F.2d at 98. Muhammad has never indicated he had any confidential correspondence with the Attorney General. Until he does, we should not consider this case ripe for resolution.

Assuming that this case is ripe for review, and further assuming that the mail from the Attorney General is confidential, I still do not think that the policy of opening Muhammad's incoming mail from the Attorney General is unconstitutional under *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). *Turner* set a flexible reasonableness standard, not a "least restrictive alternative" standard. *Thornburgh,* 490 U.S. at 414, 109 S.Ct. at 1882. MDOC's policy should be upheld because it is reasonably related to a legitimate penological objective and meets the test from *Turner. See Brewer,* 3 F.3d at 825. There is a legitimate and neutral governmental interest to which

the policy is rationally connected. MDOC considers mail from the Attorney General in the same vein as mail from all other correspondents, except those specifically listed, such as the prisoner's attorney, the courts and legal assistance organizations. Prison authorities may inspect for contraband mail from all sources except those specifically listed.

Certainly, it is not likely that someone from the Attorney General's Office would send any contraband to a prisoner, but, inasmuch as it does not affect the prisoner in personal correspondence with his attorney, the need by authorities to inspect incoming mail for contraband is not unreasonable. There are alternative means of exercising the right of prisoners to correspond confidentially with the Attorney General's Office. For example, a prisoner could ask the Attorney General to mark return mail "Confidential," which the defendants in this case at least imply would be honored. It doesn't seem that there would be any impact upon the prison administration to open the Attorney General mail in the presence of prisoners nor that the "ready alternatives," referred to in *Turner,* 482 U.S. at 91, 107 S.Ct. at 2262–63, could not be used. However, that is probably true about all mail which comes to prisoners. That is, all personal correspondence could probably be opened in the presence of prisoners. Inasmuch as courts such as the Fifth Circuit in *Brewer* have declined to find a constitutional violation under similar circumstances, I would not find that MDOC's policy of opening, outside Muhammad's presence, incoming mail from the Attorney General, is unreasonable. Therefore, I would **reverse** the decision of the district court.