18-670-pr
*Grubbs v. Brown*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 3rd day of December, two thousand eighteen.

Present:     ROSEMARY S. POOLER,
             RAYMOND J. LOHIER, JR.,
             SUSAN L. CARNEY,
                       *Circuit Judges*.

_____

CORALYN GRUBBS, LOUIS SMITH, ALI RIVERA, SEAN MILLER, individually and on behalf of all other persons similarly situated,

                       *Plaintiffs-Appellants*,

                 v.                                          18-670-pr

JAMES P. O'NEILL,[1] in his official capacity as Police Commissioner of the City of New York, NEW YORK CITY POLICE DEPARTMENT, CYNTHIA BRANN,[2] in her official capacity as Acting Commissioner of Correction of the City of New York, NEW YORK CITY DEPARTMENT OF CORRECTION, BILL DE BLASIO,[3] in his official capacity as Mayor of the City of New York, CITY OF NEW YORK,

---

[1] James P. O'Neill is automatically substituted as a Defendant-Appellee in this case pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[2] Cynthia Brann is automatically substituted as a Defendant-Appellee in this case pursuant to Federal Rule of Appellate Procedure 43(c)(2). Brann is the Commissioner of Correction of the City of New York, rather than the Acting Commissioner.

[3] Bill de Blasio is automatically substituted as a Defendant-Appellee in this case pursuant to Federal Rule of Appellate Procedure 43(c)(2).

*Defendants-Appellees*.[4]

_____

Appearing for Appellants:     Colin T. West, White & Case LLP (Gregory M. Starner, White & Case LLP, William D. Gibney, The Legal Aid Society, *on the brief*), New York, N.Y.

Appearing for Appellees:      Jonathan Popolow, Of Counsel (Richard Dearing, Claude S. Platton, *on the brief*) *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, N.Y.

Amici Curiae New York        Shannon M. Leitner, Freshfields Bruckhaus Deringer US LLP
State Defenders Association,  (Stephen Pearson, Linda H. Martin, Brent Wible, *on the brief*),
New York State Association    New York, N.Y.
of Criminal Defense Lawyers,
National Association for
Public Defense, National
Association of Criminal
Defense Lawyers, The Bronx
Defenders, Brooklyn Defender
Services, and New York
Criminal Bar Association in
support of Appellants:

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **VACATED AND REMANDED**.

Plaintiffs-Appellants Coralyn Grubbs, Louis Smith, Ali Rivera, Sean Miller, individually and on behalf of all other persons similarly situated, appeal from the February 26, 2018, order of the United States District Court for the Southern District of New York (Daniels, *J.*) (1) issuing a declaratory judgment that Defendants-Appellees' ("the City's") use of surveillance with masking technology in attorney–client booths did not violate the Sixth Amendment or the parties' 1999 settlement agreement ("1999 Settlement Agreement"), (2) dissolving a preliminary injunction and temporary restraining order that prohibited the City from turning on the cameras in question and thereby denying Plaintiffs-Appellants' request for removal of the surveillance cameras, and (3) denying Plaintiffs-Appellants' motion to hold the City in contempt of the court's orders preliminarily enjoining the City from using video surveillance. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

---

[4] The Clerk of Court is directed to amend the caption as above, including the above-noted substitutions.

Plaintiffs-Appellants initiated this lawsuit in 1992, challenging a litany of unconstitutional practices in the New York City jails. Relevant here, the suit alleged that the criminal courthouse in Richmond County lacked private space for attorneys to consult with pre-arraignment detainees, violating the detainees' Sixth Amendment right to counsel. In 1999, the district court denied Plaintiffs-Appellants' motion for partial summary judgment on these claims. *Grubbs v. Safir*, No. 92 Civ. 2132 (DC), 1999 WL 20855, at \*1 (S.D.N.Y. Jan. 15, 1999) ("*Grubbs I*"). Nonetheless, the court determined that the City had violated pre-arraignment detainees' right to counsel by failing to provide a private space for attorney–client consultation. *Id.* at \*7. The court withheld summary judgment solely to consider further legal and factual issues when composing the correct remedy for the violation. *Id.* Shortly after the district court's opinion, the parties settled the dispute. The 1999 Settlement Agreement provided: "The City shall use its best efforts to construct or install, by August 31, 1999, an interview booth for pre-arraignment detainees to consult privately with counsel in the courthouse at 67 Targee Street, Staten Island, New York." Stipulation of Settlement Agreement at 10, *Grubbs v. Safir*, No. 92 Civ. 2132 (DC) (S.D.N.Y. Sept. 30, 1999), ECF No. 62.

The settlement was abided until 2010, when the City constructed a new courthouse in Staten Island, the Richmond County Criminal Courthouse ("RCCC"). The new RCCC building had separate booths in which attorneys and clients could consult, but because guards could not monitor the booths without obstructed sightlines from their posts, the City claims that it needed to install surveillance cameras in the booths in order to prevent security incidents and respond to emergencies. Plaintiffs-Appellants objected to the installation of these cameras, ultimately procuring injunctive relief that prevented the City from operating the cameras. While the parties attempted to negotiate a more permanent resolution, the City experimented with "masking" technology that obscured portions of the image captured from attorney–client booths. The "masking technology" was designed to prevent the City from viewing a detainee while she met with her attorney. The cameras did not capture images of the attorney side of the booth and had the audio function disabled. Plaintiffs-Appellants, however, disagreed that using the masking technology preserved their right to counsel. They subsequently moved the district court for an order to remove the surveillance cameras and later to find the City in contempt of the court's injunctive orders. Shortly thereafter, the City moved for a declaratory judgment that the surveillance plan incorporating masking technology was legally sufficient under the Sixth Amendment and the 1999 Settlement Agreement. The district court granted the City's motion and denied Plaintiffs-Appellants' motion. *Grubbs v. Safir*, No. 92 Civ. 2132 (GBD), 2018 WL 1225262, at \*10 (S.D.N.Y. Feb. 26, 2018) ("*Grubbs II*").

On appeal, Plaintiffs-Appellants argue, among other things, that surveillance via cameras with masking technology violates the 1999 Settlement Agreement between the parties. As relevant here, the 1999 Settlement Agreement was reached in part to remedy the City's violation of Plaintiffs-Appellants' Sixth Amendment right to counsel.

We interpret settlement agreements according to general principles of contract law. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). We review a district court's interpretation of a contract de novo. *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004). To interpret the relevant provisions of the agreement, we "may look to certain aids, such as the circumstances surrounding a settlement agreement's

formation, when construing it for enforcement purposes." *Huertas v. E. River Hous. Corp.*, 992 F.2d 1263, 1267 (2d Cir. 1993). It is thus appropriate for us to consider the underlying Sixth Amendment violation motivating the 1999 Settlement Agreement to determine whether the City has provided a space to "consult privately." That is, under the 1999 Settlement Agreement, the City's surveillance with cameras using masking technology must be consistent with Plaintiffs-Appellants' Sixth Amendment right to counsel.

Here, the district court found that the settlement agreement did not expressly exclude the use of surveillance cameras employing masking technology in attorney–client booths and therefore the surveillance plan comported with the settlement. While we agree with the district court that the 1999 Settlement Agreement does not *expressly* prohibit surveillance, we find that the district court did not engage in the proper balancing analysis when it concluded that the City's use of masked surveillance technology comports with the settlement's requirement that the City provide a space where detainees can "consult privately" with their attorneys. Stipulation of Settlement Agreement at 10, ECF No. 62.

To evaluate whether an institutional restriction on the Sixth Amendment rights of individuals in custody is valid, we employ a balancing test to determine if the restriction "unreasonably burden[s]" an individual in custody's "opportunity to consult with his attorney and to prepare his defense." *Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001) (internal quotation marks omitted) (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)); *see also Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("There must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." (internal quotation marks omitted)). Thus, it was the district court's duty to balance the alleged burden the surveillance imposed on Plaintiffs-Appellants' Sixth Amendment rights on the one hand with the City's proffered institutional reasons for the surveillance on the other.

The district court engaged in this balancing inquiry when analyzing the surveillance system under the Sixth Amendment, but it misunderstood important Sixth Amendment jurisprudence concerning conduct that chills a detainee's communications with counsel. Specifically, the district court erroneously concluded that a detainee's "subjective impression or belief" that her conversation was being recorded and monitored did not constitute a cognizable burden on the Sixth Amendment.[5] *Grubbs II*, 2018 WL 1225262, at *8. The district court did not appropriately consider the chilling effect that the cameras' presence in the attorney–client booths could have on pre-arraignment detainees' willingness to communicate candidly with their attorneys. *See Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (considering the chilling effect on the Sixth Amendment right to counsel of a prison's mail-handling policy where the subjective

---

[5] There is further reason to believe that the chilling effect of video surveillance on pre-arraignment detainees should be given ample consideration under the 1999 Settlement Agreement. In the opinion that informed settlement negotiations, the district court concluded that a lack of private consultation space would inhibit detainees "from speaking openly and freely" to counsel, thus rendering the right to counsel "meaningless." *Grubbs I*, 1999 WL 20855, at *7. The district court's opinion thus informs the meaning of "consult privately" as used in the 1999 Settlement Agreement by incorporating the substantive right to counsel. To be able to "consult privately" therefore means that pretrial detainees at RCCC should be able to speak "openly and freely" with counsel.

beliefs of inmates that their private attorney–client communications were being read could chill the right to counsel); *see also Stover v. Carlson*, 413 F. Supp. 718, 721 (D. Conn. 1976) (finding that an inmate's "Sixth Amendment right of access to the courts is 'chilled'" by prison officials' practice of opening mail from counsel outside inmates' presence, even absent any evidence that officials were actually reading the mail).

For this reason, the possibility that a pre-arraignment detainee could believe that the City is monitoring their communications and the consequent chilling effect of that belief must be considered in evaluating the alleged Sixth Amendment violation in this case. The City counters that there are notices displayed in the attorney–client booths warning detainees that the cameras do not capture sound, record only visual information, operate for security purposes, and that detainees should remain seated in a demarcated area. This solution does not necessarily cure chilling concerns.

The district court was obligated to weigh any chilling effect of the surveillance cameras against the City's security interests to determine whether the video surveillance with masking technology violates the Sixth Amendment. But it failed to consider any chilling effect when it balanced the burden the surveillance imposes on Plaintiffs-Appellants' right to counsel with the City's institutional justifications. *Grubbs II*, 2018 WL 1225262, at *8. We thus remand so that the district court can balance the chilling effect of surveillance on Plaintiffs-Appellants' Sixth Amendment right to counsel and interpret the 1999 Settlement Agreement in light of the appropriately weighted balance.

We reject Plaintiffs-Appellants' argument that the City erred in denying their contempt motion." *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 243 (2d Cir. 2014) (finding civil contempt is a wholly remedial measure intended to "coerce future compliance or to remedy any harm caused by noncompliance" (internal quotation marks omitted)).

We have considered the remainder of the arguments from Coralyn Grubbs, Louis Smith, Ali Rivera, and Sean Miller on behalf of themselves and all other persons similarly situated and from the City and find them to be without merit. Accordingly, the order of the district court hereby is VACATED AND REMANDED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5