**Stanley L. BOSWELL, Plaintiff–Appellant,**

v.

**Robert MAYER and Melinda Cieslinski, Defendants–Appellees.**

No. 97–1710.

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 3, 1999.

Decided March 2, 1999.

Rehearing Denied April 14, 1999.

Linda M. Olivieri (briefed), Office of the Attorney General, Corrections Division, Lansing, Michigan, for Appellees.

Stanley L. Boswell (briefed), Baraga, Michigan, pro se.

Before: MARTIN, Chief Judge; NELSON and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Stanley L. Boswell, proceeding pro se, brought a civil rights action pursuant to 42 U.S.C. § 1983. In this lawsuit against a prison warden and a prison employee, Boswell alleged that the defendants violated his constitutional rights by opening a piece of his mail, sent from the Michigan Attorney General's office, in Boswell's absence. Boswell appeals from the district court's dismissal of the case. Because the defendants violated neither Boswell's right of access to the courts nor his right to receive mail, we affirm.

## I

In September 1994, this court decided *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir. 1994). In the opinion, Judge Jones, writing for the court and joined by Judge Lively, ruled unconstitutional a policy of the Michigan Department of Corrections (MDOC). The court held that "the conduct ... of treating mail sent from the state attorney general as ordinary mail rather than legal mail ... burdens Plaintiff's First Amendment rights." *Id.* at 1085. The MDOC policy for legal mail permitted a prisoner to submit a written request regarding mail "clearly designated as being from the prisoner's designated attorney, the courts, or from the Legislative Correctional Ombudsman." *Id.* at 1082. If the prisoner so requested, prison authorities had to open the legal mail in the prisoner's presence. The court found no reasonable relation between conservation of resources (the only valid penological interest propounded by MDOC) and MDOC's policy treating mail from the Attorney General as nonlegal mail. *See id.* at 1086.

On November 2, 1994, Marjorie Van Octhen, Administrator of the MDOC Office of Policy and Hearings, prepared a memorandum addressed to "All Wardens." This memo (the "Van Octhen memo") responded to the decision in *Muhammad* and promulgated a new mail policy. The policy, which governed mail sent from the Michigan Attorney General's Office and from prosecuting attorneys, required prison mailrooms to open the mail in the inmate's presence if three conditions were satisfied: (1) the prisoner had requested that the mailroom open legal mail only in his presence; (2) the return address on the envelope contained the full name of a licensed attorney; and (3) the envelope "is clearly marked 'Privileged' or 'Confidential', or specifically states that it is to be opened only in the prisoner's presence." Van Octhen believed that:

> Since most of the mail affected by this ruling will be from the Corrections Division of the Michigan Department of Attorney General, which represents the Department in all litigation, it is anticipated that most AG mail will not require special han-

dling, as there is no reason for it to be marked "confidential" or "privileged".

The memo asked wardens to inform their mailroom staff of the new policy.

Plaintiff Stanley L. Boswell is an inmate at Baraga Maximum Correctional Facility in Michigan. Until Frank J. Kelley retired on December 31, 1998, after 37 years in office, Kelley served as Michigan's Attorney General. *See* Charlie Cain, *Few Regrets for Kelley, State's "Eternal General,"* DETROIT NEWS, Dec. 14, 1998, at A1. Kelley had a staff of 293 attorneys. *See ibid.* In a handwritten affidavit dated October 5, 1995, Boswell declared that, "I requested that any and all incoming legal mail coming from Frank J. Kelley, Attorney General to be open [sic] in my presence." In his handwritten complaint, Boswell wrote that, "On June 9, 1995 Plaintiff requested the Defendant Cieslinski [a mailroom employee] and mailroom staff not to open outside his presence any mail from Frank J. Kelley Attorney General's Office." Boswell alleged that, at some point (perhaps on June 9, 1995), he received a letter bearing Kelley's return address, and that mailroom staff opened the letter outside of Boswell's presence. In his affidavit, he alleged that the Warden and Melinda Cieslinski, a mailroom employee, "refused to treat mail coming from Frank J. Kelley as legal mail," but he did not give specific examples or dates. Boswell did not allege that the opened letter contained a warning such as "Confidential" or "Privileged" or "Open only in inmate's presence."

On June 21, 1995, Robert J. Mayer, Baraga's Warden, sent a memo to Boswell. The memo read: "Mail addressed to you from the Attorney General is not considered legal mail unless it is post stamped as confidential legal mail from that office. If the Attorney General wishes your mail to be handled as privileged correspondence, he will state that in his correspondence to us and to you." Boswell filed grievances and invoked a prison administrative rule that he claimed governed mail sent from "public officials" such as Frank J. Kelley. Boswell did not list the substance of the directive.[1]

---

1. Boswell seems to refer to Administrative Rule 791.6603(6). This subsection appears to govern

On August 4, 1995, Boswell filed a pro se § 1983 complaint in state court. He named as defendants in their official and individual capacities Baraga Warden Robert J. Mayer and mailroom employee Melinda Cieslinski. Boswell alleged that, by opening the letter outside his presence, the defendants violated the administrative rule and Boswell's "constitutional right to access to the court." Boswell sought declaratory and injunctive relief and $10,000 in compensatory and punitive damages.

On September 18, 1995, the defendants removed the case to the United States District Court for the Western District of Michigan. Boswell submitted a motion for partial summary judgment, in which he asked for a ruling that the defendants violated the First Amendment by opening the mail. In March 1996, Magistrate Judge Greeley found controlling this court's decision in *Muhammad*, and he recommended that the district court grant Boswell's motion for partial summary judgment. In July, Judge Quist rejected the Magistrate Judge's report and recommendation. Judge Quist ruled that the Van Ochten policy revision complied with the rule of *Muhammad* and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Defendants moved to dismiss or, in the alternative, for summary judgment. In June 1997, Judge Quist dismissed the case, holding that the Van Octhen policy comported with the Constitution and that its alleged procedural flaws do not give rise to a claim under § 1983. Boswell filed a timely appeal.

## II

■ Boswell's complaint and motion for partial of summary judgment reflect a belief that his claim stems from a denial of his "constitutional right to access to the court" or his "First Amendment rights of access to the court." Boswell appears to lack standing to bring such a claim. In light of the decision in *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), Boswell must show that he suffered prejudice to his right of access to the court. *See Lewis*, 518

U.S. at 351, 116 S.Ct. 2174. This court has adopted the standing requirement elaborated in the *Lewis* opinion. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996) ("In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation."); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996).

■ Boswell's complaint does not satisfy this requirement. Apart from his conclusory statement that the defendants impaired his right of access, Boswell does not explain how he suffered harm. He does not allege that the incoming letter pertained to ongoing or anticipated litigation challenging either his sentence or the conditions of his confinement, *see Lewis*, 518 U.S. at 355, 116 S.Ct. 2174; also, he never mentions the contents of the letter. He does not allege that, by opening the letter in his absence, the defendants affected his access to the courts. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[E]ven if one were to accept the argument that inspection of incoming mail from an attorney placed an obstacle to access to the court, it is far from clear that this burden is a substantial one."). On appeal, he asserts for the first time that the Van Octhen policy "inflicts a chilling effect on prisoners seeking to correspond with the Attorney General's office." This conclusory assertion comes very late and still does not allege actual injury; rather, if proven, it constitutes the sort of "theoretical" injury found insufficient in *Lewis*. *See Lewis*, 518 U.S. at 351, 116 S.Ct. 2174.

■ Boswell's status as pro se litigant affords relief from the standing problem, however. Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings. Such an approach suggests that Boswell stated a claim on which he has standing to sue. *Cf. Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir.1985) ("The appropriate liberal construction requires active interpretation in some cases...."). The right of access to the courts, if it has constitutional grounding,

---

the inspection of mail sent *from* inmates in segregation *to* public officials, and not the converse. *See Burton v. Foltz*, 599 F.Supp. 114, 117–18

(E.D.Mich.1984) (reprinting Administrative Rule 791.6603, Rule 603).

probably stems from the Fourteenth Amendment's Due Process or Equal Protection Clauses. *See Lewis,* 518 U.S. at 367–68, 116 S.Ct. 2174 (Thomas, J., concurring); *Wolff,* 418 U.S. at 576, 94 S.Ct. 2963; *cf. Hampton v. Hobbs,* 106 F.3d 1281, 1284 (6th Cir.1997) (commenting that "the constitutional source of the right of access to the courts is somewhat nebulous"). A liberal reading of Boswell's complaint uncovers another claim, however—that of a First Amendment violation of the sort prohibited by this court's *Muhammad* opinion. *See Muhammad,* 35 F.3d at 1085 ("[T]he conduct that is challenged in the present case . . . burdens Plaintiff's First Amendment rights."); *see also Kensu,* 87 F.3d at 174 (recognizing a First Amendment right to receive mail, subject to uniform policies of opening mail to ensure prison security). *But cf. Wolff,* 418 U.S. at 575, 94 S.Ct. 2963 ("[T]his Court has not yet recognized First Amendment rights of prisoners in this context [of opening mail from attorneys].") (citations omitted).

A sympathetic reading of Boswell's filings produces the claim that the defendants violated his First Amendment right to receive mail, as propounded by this court in its decisions in *Kensu* and *Muhammad.* His complaint and briefs readily permit the inference that he intended to lodge a complaint under the rule of *Muhammad.* We hold that Boswell has standing to bring a claim for an adequately-pled violation of his First Amendment right to receive mail.

### III

■ Even when cast as a First Amendment claim, Boswell's suit does not merit relief. This conclusion rests on three sources: analysis of the scope of the holding of *Muhammad,* consideration of the Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and this court's decision in *Lavado v. Keohane,* 992 F.2d 601 (6th Cir.1993).

First, Boswell overstates the implications of the decision in *Muhammad.* That opinion considered a policy of the MDOC that "mail from the Attorney General is never, under any circumstances, to be treated as legal mail." *Muhammad,* 35 F.3d at 1084. Under

that policy, even if inmates asked the mailroom to treat such mail as confidential and even if the Attorney General wished it to be confidential, the mailroom would ignore the request regardless of the markings on the envelope. *See ibid.* The opinion found that MDOC's policy—"that of treating mail sent to an inmate from the state Attorney General as ordinary mail rather than legal mail"—did not pass constitutional muster. *Id.* at 1085. Boswell does not challenge this practice, however. Rather, he challenges MDOC's current policy, which treats mail from the Attorney General as legal mail if (a) the envelope contains the return address of a licensed attorney, and (b) the envelope has markings that warn of its privileged contents. If an envelope meets both conditions, the prisoner may request that, as with legal mail from other sources, the mailroom open the letter in his presence.

In *Wolff v. McDonnell,* the Supreme Court discussed a Nebraska prison mail policy. The Court confronted "the narrow issue . . . whether letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate or whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband." *Wolff,* 418 U.S. at 575, 94 S.Ct. 2963. The Court rejected the additional protections proposed by the Court of Appeals:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar. As to the ability to open the mail in the presence of inmates, this could no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. . . . [W]e think that petitioners, by acceding to a rule

whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps more, than the Constitution requires. *Id.* at 576–77, 94 S.Ct. 2963. Justice White's opinion in *Wolff* found appropriate (a) that the mail contain the name and address of an attorney and (b) that the attorney and the letter itself inform authorities that the mail represented privileged communications.[2] MDOC's policy conforms to these requirements.

Further, a decision of this court suggests that MDOC's policy offers more protection than that required by the First Amendment. In *Lavado v. Keohane,* Judge Jones, the author of the opinion in *Muhammad,* held that federal prison authorities enjoyed qualified immunity for their actions taken in compliance with a mail policy. *See Lavado,* 992 F.2d at 608–09. That policy restricted inmate's rights more than does the present MDOC policy: the Bureau of Prisons mail regulations permitted the Warden to open, read, and copy mail from, among others, defense attorneys and state Attorneys General, unless the envelope adequately identified the sender as an attorney and contained the precise phrasing "Special Mail—Open only in the presence of the inmate." *See id.* at 607 n. 1 (reprinting policies found at 28 C.F.R §§ 540.2, 540.14, 540.18, and 540.19). While the court did not rule on the constitutionality of the policies, it noted that, "Neither the Supreme Court nor this circuit has held these regulations to be unconstitutional." *Id.* at 607. It also quoted the Court's opinion in *Wolff* to support this proposition, and it remarked that "we are aware of no published opinion to have held that *strict* application of the Bureau of Prisons regulations violates inmates' constitutional rights." *Id.* at 608 (emphasis added). Compared to the Van Octhen policy, the Bureau of Prisons mail regulations appear to impose a greater burden on inmates' First Amendment right to receive mail, yet courts have upheld the constitutionality of the Bureau of Prisons regulations. *See Henthorn v. Swinson,* 955 F.2d 351, 353–54 (5th Cir.), *cert. denied,* 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); *United States v. Stotts,* 925 F.2d 83, 89–90 (4th Cir.1991); *cf. Brown v. Williams,* No. 95 CV 3872(SJ), 1998 WL 841638, at *3 (E.D.N.Y. Dec.2, 1998) (finding no cognizable *Bivens* claim where federal prison officials opened envelope marked "Special Mail—Open Only in presence of inmate," but lacking return address of an individual attorney, outside the presence of the inmate); *Deutsch v. United States Dept. of Justice,* 881 F.Supp. 49, 54–55 (D.D.C.1995) (finding no constitutional violation where prison officials denied special mail privileges to inmate until his attorney verified his legal license), *aff'd,* 93 F.3d 986, 1996 WL 460102 (D.C.Cir.1996) (unpublished) (per curiam).

In light of the above authority, we hold that the Van Octhen policy does not violate Boswell's First Amendment rights. This case does not raise the problem of *Muhammad* (whether MDOC may categorically exclude from the category of "legal mail" that mail sent from the Attorney General) or of *Kensu* (whether hand-delivered materials constitute "mail" because they do not move through the United States Postal Service or private delivery services). Rather, the Van Octhen policy treats mail from the Attorney General as legal mail. The policy adds but one condition that does not also apply to mail from defense attorneys, the courts, and the Legislative Correctional Ombudsman: the envelope from the Attorney General must have markings showing that it contains confidential material.

This requirement passes constitutional muster and makes sense. Unlike mail from the ACLU, courts, defense attorneys, and so

---

2. We recognize that some courts dispute the vitality of *Wolff. Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), appeared to demand a heightened standard of review for prisoner mail claims, but *Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), limited that decision to outgoing mail and applied the reasonableness test of *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to incoming mail. *Compare Bieregu v. Reno,* 59 F.3d 1445, 1452 (3d Cir.1995) (emphasizing that the Court has abandoned the distinction between free speech rights of inmates and outsiders), *with Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (focusing on *Abbott*'s overruling of past doctrine), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

**390**

forth, mail from Prosecuting Attorneys and the Attorney General will almost always consist of documents in the public record. *See Muhammad,* 35 F.3d at 1087 (Siler, J., dissenting); *Hall v. Conklin,* 966 F.Supp. 546, 550 (W.D.Mich.1996) ("The [Van Ochten] policy eliminates the need for corrections personnel to supervise the opening of multiple service copies of Attorney General defense pleadings and other such papers that are in the public record."); *cf. Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir.1987) (discussing the Bureau of Prisons requirement that "the prisoner advise his attorney to place the special legend on the envelope": "This requirement is easy to comply with and therefore presents no serious constitutional question; the cost of compliance being essentially zero, the restriction on free speech is trivial ...."). After all, the Attorney General represents the State. In the rare instance when the Attorney General sends a "sensitive and confidential response" to an inquiry by a prisoner, *Muhammad,* 35 F.3d at 1083, the Attorney General need only stamp the word "Privileged" or "Confidential" on the envelope.

In this case, Boswell has not even alleged that the envelope contained legal (let alone privileged) material, or that the envelope bore the appropriate cautionary markings. Given the recognized need of prison authorities to inspect incoming mail for contraband, the Van Octhen policy represents a reasoned compromise between the rights of inmates and the security and administrative efficiency of the institution. Its reasonableness satisfies the test of *Turner v. Safley,* 482 U.S. 78, 89–91,. 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), governing constitutional challenges to prison regulations. The district court properly dismissed the case.

■ Below and on appeal, Boswell repeatedly argues that the promulgation of the Van Octhen policy failed to comport with a host of state laws and administrative procedures. Such alleged noncompliance does not state a claim under § 1983. *See, e.g., Smith v. Freland,* 954 F.2d 343, 347–48 (6th Cir.), *cert. denied,* 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992); *Barber v. City of Salem, Ohio,* 953 F.2d 232, 240 (6th Cir.1992). Even if implemented in violation of state law, the

policy satisfies the dictates of the First Amendment.

**IV**

While Boswell may have standing to assert a First Amendment claim, he did not show that the defendants violated his constitutional rights. The Van Ochten policy satisfies constitutional requirements, and it balances inmates' rights with concerns for prison efficiency and security. The judgment of the district court is AFFIRMED.