**William C. ERWIN, Plaintiff–Appellant,**

v.

**John E. POTTER, Postmaster General, Defendant–Appellee.**

No. 02–5334.

United States Court of Appeals, Sixth Circuit.

Nov. 4, 2003.

William C. Erwin, Columbia, TN, pro se.

Mercedes C. Maynor–Faulcon, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, Stephan J. Boardman, Manassas, VA, Ted P. Gerarden, United States Postal Service, Washington, DC, for Defendant–Appellee.

Before BOGGS, Chief Judge; and KRUPANSKY and CLAY, Circuit Judges.

BOGGS, Chief Judge.

Plaintiff William C. Erwin, proceeding pro se, filed a complaint under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), against the Postmaster General for unlawful discharge. Erwin claims that he was fired as a non-career temporary relief rural mail carrier because of his age. The district court granted the defendant summary judgment, holding that the alleged remark by Erwin's supervisor, "as we get older, we get slower," could be interpreted to refer to Erwin's speed in delivering the mail, rather than his age. Because the district court did not factor into its analysis the additional comment "you're too old to carry the mail," that his supervisor allegedly made when Erwin was fired, it failed to consider the evidence in the light most favorable to him. Because this second remark could constitute direct evidence of discrimination under our holding in *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir.2003) (*en banc*), we hold there is a genuine issue of material fact raised by the direct evidence of discrimination. Furthermore, as we explain below, the holding in *Wexler* also has implications for the district court's analysis of Erwin's age discrimination claim based on circumstantial evidence. Therefore, we reverse the district court's grant of summary judgment.

## I

William C. Erwin was hired on March 25, 2000, at the age of 45, as a temporary relief rural carrier for the Columbia, Tennessee, Post Office. Erwin had no union

bargaining rights and was a non-career employee limited to working 359 days per year. His main duty was to fill in for absent mail carriers on regular routes or to deliver the mail on shorter auxiliary routes. Although he was hired primarily to cover one route, he actually rotated among four different routes during his tenure. He received training on some, but not all, of the routes to which he was assigned. Other postal employees gave him informal guidance on-the-job. The rest of his training consisted of a driver's education class in Nashville and a mail-sorting workshop in Madison, Tennessee.

From the beginning of Erwin's employment, the post office received complaints about late and mis-deliveries on the routes for which he was responsible. His supervisor, Kathy Hinkle, counseled him five to ten times about the deficiencies in his performance, based on customer complaints and the fact that Erwin often left the post office late to make his deliveries. On July 13, 2000, the local postmaster, David Dean, conducted a pre-disciplinary interview, warning Erwin that he would be removed if his performance did not improve. Customer dissatisfaction continued, however, including a letter of complaint published in the local newspaper about late deliveries on one of Erwin's routes.

The record contains evidence that Erwin's load on September 29 and 30, 2000, was unusually heavy. The record also suggests that the post office had an informal practice by which mail carriers would help each other out if one had an excessive amount of mail to deliver on a particular day. In Erwin's case, Hinkle and John Rumbaugh, her deputy, explicitly forbade other employees from assisting him, although there was evidence that they may have allowed it when other employees fell behind. On September 30, 2000, Erwin was supposed to complete his route by 3:26 p.m. When the post office closed at 7:00

p.m., Erwin had not yet returned. He called Hinkle at home when he finally finished the route at 9:30 p.m., so that she could let him into the building to clock out, which she did.

Hinkle, with the concurrence of Postmaster Dean, fired Erwin on October 2, 2000, the next business day after his late return to the post office. Erwin claims that when she fired him she told him that "he was too old to carry the mail," a statement corroborated by another employee in an affidavit. Erwin also claims that in May Hinkle said: "We're not as young as we used to be. As we get older, we get slower." He also contends that the Postmaster General discriminated against him by not providing adequate training, giving him an unreasonably heavy workload, and not providing him assistance when warranted.

Erwin testified in his deposition that he believed that he was the only temporary carrier at the Columbia post office during the six months he worked there. After his termination, the other postal workers covered his duties, until Sheila Haskin, age 38, was hired on November 4, 2000. Over the next four months, Dean hired three additional temporary relief rural carriers in addition to Haskin: Tony L. Spiess, age 47, hired on December 16, 2000; Laurie Day, aged 32, and Elmer Rittenberry, age 50, both hired on February 24, 2001.

## II

We review the district court's grant of summary judgment *de novo*. *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995)(per curiam). Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering the evidence, the court must view the evi-

dence and facts in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To respond to a motion for summary judgment, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 340 (6th Cir.1993). The non-moving party "may not rest upon [its] mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Liberty Lobby,* 477 U.S. at 251; *Copeland,* 57 F.3d at 479. However, the district court is not permitted to make credibility assessments or weigh the evidence. *Liberty Lobby,* 477 U.S. at 255.

Erwin is a pro se plaintiff and did not present his argument in legal terms. It is, however, appropriate to interpret the pleadings of pro se plaintiffs liberally. *Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir.1999). In *Boswell,* the court read "sympathetically" an inmate's claim that opening a letter from the attorney general outside of his presence violated his right of access to the courts. The court reformulated the pleading into a claim for which the inmate had standing: that his First Amendment right to receive mail had been violated. *Id.* at 388. Applying this active interpretation standard, as approved in *Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir.1985), we infer that Erwin intended to argue age discrimination based on the direct evidence of his supervisor's alleged statement: "you're too old to carry the mail." We also construe Erwin's allegations of age-related remarks on two separate occasions as circumstantial evidence of discrimination, requiring analysis under the separate *McDonnell Douglas* framework.

The Age Discrimination in Employment Act prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is designed to prevent arbitrary discrimination in the workplace based on age. *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The same analysis governs both suits under the ADEA and Title VII employment discrimination cases. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir.2002). Therefore, Erwin can show age discrimination either through direct evidence or circumstantial evidence, but does not have to show both. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). We consider each method in turn.

## III

### A. Direct Evidence

■ Direct evidence is evidence that "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment action. *Bartlik v. United States Dep't of Labor,* 73 F.3d 100, 103 n. 5 (6th Cir.1996) (citations omitted). Direct evidence of dis-

crimination is rare because employers generally do not announce that they are acting on prohibited grounds. *Kline*, 128 F.3d at 348. This circuit has provided the statement "I fired you because you are disabled" as an example of direct evidence. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998). Racial slurs or statements that suggest that the decision-maker relied on impermissible stereotypes to assess an employee's ability to perform can constitute direct evidence. *Cushman–Lagerstrom v. Citizens Ins. Co. of America*, No. 01–2690, 72 Fed.Appx. 322, 2003 WL 21774017, 2003 U.S.App. LEXIS 15635, at *25 (6th Cir. July 30, 2003) (unpublished opinion) (citing cases). The statement "you're too old to carry the mail," made while firing an employee, is sufficiently blunt that a fact finder could construe it as direct evidence of age discrimination against Erwin. Testimony that the statement was made could demonstrate that unlawful discrimination was at least a motivating factor in Hinkle's decision to fire Erwin. *See Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) (citing cases for the definition of direct evidence).

Erwin alleged that when his supervisor, Kathy Hinkle, fired him, she stated: "You're too old to carry the mail." In order to create a issue of genuine material fact, the non-movant may not just allege wrongdoing, but must also produce some affirmative evidence supporting his claims. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although Erwin's deposition contains the clearest evidence that Hinkle said he was too old, a colleague confirmed that Hinkle had said something similar a few months earlier, probably in May: "I personally heard Kathy Hinkle tell Carlos Erwin that he was getting to [sic] old to do the job; that even though they were about the same age, she had been there longer, and Carlos wasn't as fast as he used to be."[1] Finally, the Postmaster General does not now challenge the fact that Hinkle said Erwin was "too old to do the job," quoting the language in his brief on appeal, although he did assert unequivocally that Erwin was fired because of his performance, not his age. Nor did Hinkle deny the more direct formulation—"you're too old to carry the mail"—under oath, although she did swear that she did not fire Erwin because of his age. Therefore the record contains slim, but nevertheless affirmative, evidence of a genuine issue of material fact, namely whether Hinkle's statement constitutes direct evidence that Erwin was fired because of his age. By only considering the blander formulation, the district court failed to view the evidence in the light most favorable to Erwin, as required on summary judgment.

In analyzing the direct evidence claim, the district court considered a different statement that Erwin alleges Hinkle made: "We are not as young as we used to be, as we get older, we get slower." The court noted that Erwin alleged that Hinkle said something similar at one other time, but it concluded that the statements showed that Erwin was fired because he was slow rather than because of his age. That is a reasonable interpretation of the "as we get older, we get slower" comment but not of the more direct statement "you're too old to carry the mail" or even Erwin's paraphrase of another alleged Hinkle statement: "it's hard to be as sharp as when I was younger." By limiting its consideration to one formulation of Hinkle's comments regarding Erwin's age and ability to

---

1. Erwin suggests that Postmaster David Dean may have overheard the conversation in which Hinkle fired Erwin because Dean was standing right outside the door when he opened it, but Erwin did not question Dean about his presence there.

deliver the mail, the district court failed to consider the evidence in the light most favorable to Erwin, the standard to which he was entitled. Failing to address favorable evidence is sufficient grounds for reversal of summary judgment. *Logan v. Denny's Inc.*, 259 F.3d 558, 567–68 (6th Cir.2001); *D'Agastino v. City of Warren*, No. 01–4357, 2003 WL 22220530, 75 Fed. Appx. 990, 2003 U.S.App. LEXIS 19823, at *14 (6th Cir. Sep. 24, 2003) (unpublished) (reversing grant of summary judgment on a § 1983 claim because the district court failed to consider the plaintiff's testimony that the arresting officer slammed his face into the pavement); *Polk v. Local 16, Int'l. Union Bricklayers & Allied Craftsmen*, No. 94–3272, 1995 WL 241999, 1995 U.S.App. LEXIS 9758, at **9–10 (6th Cir. Apr. 25, 1995) (unpublished opinion) (holding abuse of discretion in an age discrimination suit for excluding an affidavit with an alleged statement by a supervisor that "construction is a young man's game").

Furthermore, after the district court granted summary judgment against Erwin, this court decided *Wexler v. White's Fine Furniture*, in which a supervisor justified a demotion by commenting that the plaintiff, then a manager, would be happier returning to the sales staff because he was too old for the aggravation of running a store. The court found those remarks constituted direct evidence of age discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (*en banc*). The statements made during the meeting in which Wexler was demoted, namely "you're 60 years old, aren't you Don?" and that White's would be "really grinding their managers in the future," *ibid.*, were more oblique references to Wexler's age than the unvarnished "you're too old to carry the mail" alleged by Erwin in this case.

The context in which the comments are made is also critical. Discriminatory remarks made while implementing an adverse employment action are likely to reveal animus. *See Wexler*, 317 F.3d at 572 (citing *Weberg v. Franks*, 229 F.3d 514, 523–26 (6th Cir.2000)). In contrast, occasional disparaging remarks made during the regular course of business about age or other protected characteristics are much more likely to be considered the kind of "isolated and ambiguous" comments that do not trigger employer liability. *See Phelps v. Yale Security Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993) (citing *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989)). Here, Hinkle declared, while firing Erwin, that he was "too old to carry the mail." This constitutes an "association of ... stigmatizing beliefs with an adverse employment decision" that creates a genuine issue of material fact regarding whether she was motivated, at least in part, to fire Erwin because of his age. *Wexler*, 317 F.3d at 572.

The record in this case consists of one very direct alleged statement of discrimination: "you're too old to carry the mail." Although obviously not binding precedent on this court, the approach of the Supreme Court of Michigan in deciding a case with a parallel fact pattern is illustrative. That court allowed a plaintiff to base an age discrimination claim on his employer's statement, made when firing the plaintiff, then aged 48, that the latter was "getting too old for this shit." *De Brow v. Century 21 Great Lakes, Inc.*, 463 Mich. 534, 536, 620 N.W.2d 836 (2001) (per curiam). The court acknowledged the remark was susceptible to various interpretations ranging from discrimination to commiseration. *Id.* at 538, 620 N.W.2d 836. *See also Wexler*, 317 F.3d at 586 (Krupansky, J., dissenting) (arguing that Wexler's employer was trying to give him a "graceful exit" by portraying his return to the sales floor as prompted by Wexler's age rather than by his poor performance as a manager).

Likewise, a finder of fact could interpret Hinkle's comment about Erwin being too old to carry the mail as an attempt to spare his feelings. Nevertheless, assessments about the credibility, or import of statements, are improper on summary judgment. *Ahlers v. Schebil,* 188 F.3d 365, 369 (6th Cir.1999). Because a rational jury could take Hinkle's statement at face value, summary judgment was improper in this case.

## B. Circumstantial Evidence

*Burden of Proof*

Because direct evidence of discrimination is rare, plaintiffs are also able to present circumstantial evidence within the well-known *McDonnell Douglas* framework to prove their claims. *Trans World Airlines,* 469 U.S. at 121 (citation omitted). In order to prevail on a circumstantial case, a plaintiff must first make a prima facie showing, which gives rise to a presumption of discrimination. Then the defendant must offer a legitimate, non-discriminatory reason for the adverse employment action. In response, the plaintiff must show that the defendant's reason for acting is pretextual. *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cicero v. Borg–Warner,* 280 F.3d 579, 582–83 (6th Cir.2002). Direct evidence and circumstantial evidence claims run on parallel tracks, and therefore failure to sustain a claim under one framework does not undermine the other. *Trans World Airlines,* 469 U.S. at 121; *Kline,* 128 F.3d at 348. In particular, the burden of persuasion stays with the plaintiff throughout the *McDonnell Douglas* analysis; in contrast, the defendant in a direct evidence case has the burden to show that its stated reason for acting against the plaintiff was not pretextual. *Weberg,* 229 F.3d at 522–23; *Johnson v. University of Cincinnati,* 215 F.3d 561, 572 (6th Cir.2000) (citing *Man-* zer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir.1994) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989))).

Therefore, the district court erred when it stated that under both direct and circumstantial evidence methods of proof, Erwin must "show that his age was a determining factor in his termination." To the contrary, under the direct evidence approach, the Postmaster General must show a legitimate reason for terminating Erwin's employment that was not related to his age. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *See Trans World Airlines,* 469 U.S. at 121 (stating that *McDonnell Douglas* burden shifting is inapplicable where the plaintiff presents direct evidence); *Wexler,* 317 F.3d at 585, n. 10 (Krupansky, J. dissenting) (paraphrasing *Terbovitz v. Fiscal Court of Adair Cty.,* 825 F.2d 111, 115 (6th Cir.1987)).

*Prima Facie Case: Qualification*

■ In order to make a prima facie case of discrimination using circumstantial evidence, Erwin must show that 1) he is forty or over; 2) he suffered an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by a younger person. *See Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 69 (6th Cir.1982) (citations omitted). Parts one and two are undisputed.

The district court erred in holding, as a matter of law, that Erwin was unqualified for the job. The basic approach for a plaintiff who wants to show job qualification is to show that he has met the legitimate expectations of his employer and performed to the employer's satisfaction. *Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723, 729 (6th Cir.1999). Testimony from supervisors or co-workers that an employee's performance was acceptable

may not suffice to create an issue of material fact concerning an employer's overall satisfaction with job performance. *Ibid.* (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1994)). Therefore, Erwin's assertions that his work was excellent when he was properly trained, and his colleagues' affidavits to that effect, whether hearsay or not, would be insufficient to overcome the clear dissatisfaction that Hinkle and Dean expressed with Erwin's work. This is the reasoning upon which the district court based its analysis. *But see Mills v. Ford Motor Co.*, 800 F.2d 635 (6th Cir.1986) (accepting testimony by other employees as to the plaintiff's work performance because the record showed that her supervisors did not visit her work area and only counseled her for five minutes before firing her for poor performance).

Although the district court was correct that plaintiff may not simply assert that he is qualified, this circuit has been careful to analyze qualification at the prima facie stage without taking into consideration the legitimate non-discriminatory reason for termination that a defendant may offer in the rebuttal stage. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661–62 (6th Cir.2000). A claim of poor work performance is not an absolute bar to a showing of a prima facie case. *Danielson v. City of Lorain*, 938 F.2d 681, 683 (6th Cir.1991) (accepting *arguendo* that the plaintiff had made a prima facie case of age discrimination in spite of documented poor performance, including a two-week disciplinary suspension). A court must be careful to judge qualification on the actions and performance before the first instance of discrimination. *Id.* at 662–63. In Erwin's case, this would be difficult to do since Hinkle's first allegedly ageist remark was made in May 2000 and Erwin started work on March 25, 2000. Four to eight weeks is generally insufficient time to determine if a new employee is able to do the job properly.

The district court should have at least considered Erwin's education and skills acquired in previous employment as part of its analysis of his qualification for the job. *Cicero v. Borg–Warner Automotive Inc.*, 280 F.3d 579, 585–86 (6th Cir.2002). The record does not provide this information, other than Erwin's statement that he passed the post office qualification exam for a clerical position. Therefore a question of material fact exists concerning Erwin's qualifications for the job.

In addition, this circuit recently clarified that at the prima facie stage, a court should focus on a plaintiff's objective qualifications for the job, rather than the employer's assessment of the performance. *Wexler*, 317 F.3d at 575–76. Using that standard, Erwin is arguably qualified for the job for the reasons suggested above. Furthermore, *Wexler* held that if an employee's substandard performance was based on conditions outside his control, then the employer's expectations could not be the sole criterion for determining qualification. *Id.* at 575. (citing *Godfredson v. Hess & Clark Inc.*, 173 F.3d 365 (6th Cir. 1999) (finding that store manager could not be held responsible for a drop in sales attributable to an economic downturn and therefore the legitimacy of the employer's expectation of sales growth was a genuine issue of material fact)). In this case, the record shows that Erwin was given heavy loads of mail to deliver, that other colleagues were prevented from helping him, as was allegedly the custom, and that his training was not consistent. Furthermore, four people were hired in the aftermath of Erwin's departure to work as temporary relief rural carriers. The post office upgraded auxiliary route 18, the route that Erwin finally completed at 9:30 p.m., leading to his termination, to a regular route shortly after his departure. Under the

*Wexler/Godfredson* line of reasoning, this is enough to raise an issue of material fact about the legitimacy of employer expectations and, consequently, Erwin's qualification for the job.

*Prima Facie Case: Replacement*

■ The district court also erred in finding that Erwin did not satisfy part four of the prima facie case because he was not replaced by a younger employee. As noted above, over the next five months after he was fired, the post office hired four people, ranging in age from 32 to 50, as temporary relief rural carriers. The first person hired to fill Erwin's position started work only three weeks after he left, so that the temporary sharing of his workload among the other postal workers in the interim cannot qualify as the kind of redistribution that precludes a finding that the dismissed employee was replaced. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) (discussing that an existing employee must take over the discharged employee's duties on a permanent basis in order for the termination of employment to be considered an economically necessary reduction in force, rather than discrimination). The person who initially replaced Erwin was 38 years old, nine years younger than he; this creates a genuine issue of material fact for the purposes of his age discrimination claim. We hold that the trial court erred in its preliminary review, and that Erwin could satisfy the fourth part of the prima facie test by showing he was replaced by someone younger.

## IV

For the reasons outlined above we hold that the district court erred in granting the defendant summary judgment. We therefore REVERSE the district court's order granting the defendant's motion for summary judgment and remand this case for further proceedings not inconsistent with this opinion.