NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0738n.06
Filed: December 3, 2008

No. 07-4104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| IRVIN FRANK KRAMER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| REGINALD WILKINSON, et al., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |

Before:     BOGGS, Chief Judge; and MERRITT and GRIFFIN, Circuit Judges.

PER CURIAM.  Irvin Kramer, proceeding pro se, appeals the decision of the district court dismissing his 42 U.S.C. § 1983 suit against Reginald Wilkinson, the former Director of the Ohio Department of Rehabilitation and Correction ("ODRC") and  Dr. Ronald Moomaw, director of Clinical Services at the ODRC.  The suit alleges that the coerced medical care Kramer has received violates the Constitution's prohibitions against cruel and unusual punishment and deprivation of liberty without due process of law.  He argues that the lithium prescribed for his diagnosed mental conditions is causing his kidneys to fail and that he has a constitutional right to prevent the prison system from medicating him over his objections.  He also alleges at least one instance of forcible medication, where he was held down and administered Haldol, an anti-psychotic medication.  The district court held that he failed to exhaust the administrative remedies available

No. 07-4104
Kramer v. Wilkinson

to him in the prison system as required by the Prison Litigation Reform Act ("PLRA") and, in the alternative, that his complaint failed to state a claim. For the reasons outlined below, we affirm the district court's decision that Kramer's pleadings failed to state a claim on which relief could be granted.

## I

Kramer is an inmate currently incarcerated at the Grafton Correctional Institution in Grafton, Ohio. He is diagnosed with manic depression and prescribed lithium to control his disease. He has been taking the medication under the supervision of the ODRC since 1995. He alleges that he withdrew consent for the medication and it has been involuntarily administered to him since 1999. In February 2004, Kramer was afforded an involuntary medication hearing. The hearing resulted in a decision to continue to require him to take his prescribed medication. That decision was appealed by Kramer and affirmed by Dr. Moomaw. At some point thereafter[1] Kramer filed an informal complaint alleging that his mental health treatment was harming him and requesting that he be removed from the Mental Health caseload. The complaint was handled by an appropriate staff member and denied. Kramer properly filed a notification of a grievance and appealed the subsequent adverse decision to the Office of the Chief Inspector. According to a prison system review of his grievance file, Kramer named "Ms. Henderson, RN, Dr. Wayshville, Mental Health, Dr. Hammond, Mental Health Administrator, and Dr. J. Herbert Manton" but neither of the defendants. On November 22, 2005, the Office of the Chief Inspector described the appeal as a request "to be

_____

[1]The record does not contain his original informal complaint. The district court relies only on a review of Kramer's grievance file by Grafton's Assistant Chief Inspector, Hugh Daley.

- 2 -

removed from the Mental Health caseload" and affirmed, concluding that "although [Kramer does] not agree with the treatment [he is] receiving [his] mental health concerns are not being ignored and are addressed by a licensed mental health professional."

Simultaneously to this grievance process, Kramer pursued relief in the federal courts and filed this suit February 3, 2005, naming Wilkinson and Dr. Moomaw as defendants. The original complaint alleged that "mental health in the Ohio prison system has gone down . . . ." Specifically, Kramer states that "doctors say I would have to go off my medication (lithium) because of kidney failure. I can control my manic depression but I cannot control my kidneys . . . the last three years I have been asking about getting off the mental Health case load." He also alleged a specific incident in April 2003 where he refused medication and was involuntarily administered a shot of Haldol. In detailing this event, his complaint named four ODRC employees (but neither of the defendants): Carol Moul; Mike Malaya; Lieutenant Scott; and Lieutenant Cope. He now asserts he has "a legal right to a second opinion" and therefore "ask[s] the court to order D.R.C.'s mental Health to take him off Mental Health Case Load and to be med free. The Constitutional rights of Kramer has been violated and what happened to due process of law." He asks also for $ 7 million in damages, requesting that, should he prevail and obtain an award, "3 million [go] to D.R.C.'s Mental Health to upgrade, and 4 million to prison reform advocacy center."

On March 7, 2005, the district court dismissed Kramer's complaint *sua sponte* for failure to exhaust his administrative remedies. Plaintiff appealed and this court reversed in light of the Supreme Court decision in *Jones v. Bock*, 127 S. Ct. 910 (2007), which invalidated the heightened pleading requirements imposed by this court for litigants under the PLRA and applied by the district

court to Kramer's complaint. *Kramer v. Wilkinson*, 226 F. App'x 461 (6th Cir. 2007) (per curiam) (unpublished opinion). The suit was remanded for consideration under the proper legal standard.

On remand, the defendants moved to dismiss, asserting failure to exhaust as an affirmative defense and failure to state a claim on which relief could be granted under Fed. R. Civ. P. 12(b)(6). Kramer moved for summary judgment. The district court denied the motion for summary judgment and dismissed the complaint. The court held that the only relevant exhausted grievance did not name the defendants nor discuss lithium and therefore the claims in this suit were not exhausted. In the alternative, the court held that Kramer's allegations failed to state a claim on which relief could be granted because it did not demonstrate that defendants acted with the "deliberate indifference to a serious medical need" that constitutes a violation of the Eighth Amendment. Finally, the district court noted that the complaint made no reference to, or explanation of, defendant Wilkinson's participation in the alleged illegality and, accordingly, held that even if there were an exhausted claim, he should be dismissed as a defendant.

This appeal followed.

## II

The PLRA requires a prisoner who wishes to file a civil rights action challenging the conditions of confinement to first exhaust the administrative remedies available in the prison system. 42 U.S.C. § 1997(a). Kramer argues that his claims were exhausted by his grievance against the involuntary medication. The district court, however, held that Kramer's grievance failed to exhaust his claims because he did not name the defendants or allege the specific facts on which he now asks

No. 07-4104
Kramer v. Wilkinson

for relief. We review such a determination de novo. *Owens v. Keeling*, 461 F.3d 763, 768 (6th Cir. 2006).

Before discussing this exhaustion issue, it is important to note that the PLRA affords a measure of flexibility to a federal court in approaching prisoner's claims. "[T]he PLRA exhaustion requirement is not jurisdictional" and therefore a court can "dismiss plainly meritless claims without first addressing what may be a much more complex question . . . whether the prisoner did in fact properly exhaust available administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006).

Kramer's claims arise out of two different sets of circumstances. Exhaustion regarding claims relating to one set is complex and discussed below. But exhaustion on the claim arising out of the other circumstances is not and we hold that the district court properly dismissed for failure to exhaust the claim alleging a constitutional violation arising from a specific instance of forcibly administered Haldol. None of the three grievances Kramer fully pursued through the prison system's grievance process – regarding the general practice of involuntary medication, favoritism in job assignments, and the law library equipment – plausibly included this specific incident. Kramer is barred by PLRA from proceeding on this claim in federal court.

Kramer's other claims, however, arise out of more general allegations about involuntary medication and present a much closer question regarding exhaustion. His exhausted grievances include one that alleged he wished "to be removed from the Mental Health caseload." The district court concluded that this was insufficient to exhaust because the exhausted grievance was "against other individuals . . . who are not defendants herein" and "the plaintiff's Grievance File 'contains

no complaints concerning his treatment neither with Lithium nor with the state of Mental Health services having gone down hill.'" It is not at all clear whether this assessment was correct.

Whether a relevant grievance sufficiently exhausted a claim to allow a prisoner to proceed in federal court is "defined not by the PLRA, but by the prison grievance process itself." *Jones*, 127 S. Ct. at 922 (citing *Woodford*, 548 U.S. at 88 ("[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules . . . .")). The Ohio policy at issue here, however, is ambiguous as to both of the district court's reasons for holding Kramer did not exhaust. It is unclear whether a grievance with generalized facts is sufficient and it is unclear whether a grievance regarding an institutional decision to require medication requires named defendants. *See* OHIO ADMIN. CODE 5120-9-31(K) (The initial informal complaint "must contain specific *information*; dates, times, places, the event giving rise to the complaint and, *if applicable*, the name or names of personnel involved and the name or names of any witnesses.") (emphasis added). There is no authoritative interpretation of the Ohio grievance process by this court or a state court to guide us. We would therefore be required to analyze closely the grievance process's requirements in the first instance in order to determine whether he has sufficiently exhausted. *See Jones*, 127 S. Ct. at 922-24 (discussing the Michigan grievance process in rejecting a per se rule that exhaustion required defendants to be named, reviewing both the policy's mandates and the forms used by prisoners).

In light of the flexibility allowed by the PLRA noted above, we will not resolve this statutory interpretation question and instead proceed to the easier merits issue.

**III**

This circuit reviews "de novo an order dismissing a complaint under Rule 12(b)(6) for failure to state a claim for relief." *Daubenmire v. City of Columbus*, 507 F.3d 383, 387 (6th Cir. 2007). Kramer's complaint, properly benefitting from "a liberal construction," makes two allegations of constitutional harm. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). He argues that he has been involuntarily administered medicine, asking "whatever happened to due process of law." He also alleges that the course of medical treatment is dangerous to his health because "two doctors say I would have to go off my medication (lithium) because of kidney failure." Kramer has not alleged facts that allow him to recover on either theory.

**A**

Our circuit has recognized that "individuals in state custody enjoy [a] protectable liberty interest[] . . . to refuse medical treatment." *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996) (citing, *inter alia*, *Washington v. Harper*, 494 U.S. 210, 221 (1990)). But that interest is often subject to regulation in the prison setting because of the "legitimacy, and the necessity, of considering the State's interests in prison safety and security . . . ." *Harper*, 494 U.S. at 223; *cf. United States v. Green*, 532 F.3d 538 (6th Cir. 2008) (upholding order for involuntary medication to allow defendant to stand trial). Here, like the regulation in *Harper*, Ohio's policy of involuntary medication where determined to be necessary by prison doctors "is an accommodation between an inmate's liberty interest in avoiding forced administration of . . . drugs and the State's interests in providing appropriate medical treatment to reduce the danger than an inmate suffering from a serious mental disorder represents to himself or others." *Harper*, 494 U.S. at 236. In light of his admitted

mental illness and the prison doctor's conclusions that his medication is necessary to control that illness, Kramer's naked assertions that he does not wish to be medicated fails to demonstrate that the medical choice is not "reasonably related to legitimate penological interests." *Id.* at 223; *see also Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 751 n.16 (6th Cir. 2004) ("In cases involving constitutional challenges to the actions of prison administrators, the Supreme Court has stressed repeatedly that the decisions of administrators are entitled to substantial deference."). Even if he were to prove the facts alleged he could not obtain relief.

While Kramer does not expressly allege that the decision to medicate him involuntarily was made without constitutionally sufficient process, we note that he was afforded a hearing to challenge the medication and given an explanation of why the prison felt he must continue on the medication. Indeed, his complaint refers to the "appeal decision of 2/5/04" in which defendant Moomaw upheld the treatment as medically necessary. *See also* J.A. 18 (Appeal Decision affirming the decision of "an involuntary medication hearing" that upheld the treatment for Kramer). The actions of defendants did not fall below the standard demanded by procedural due process. *See Harper*, 494 U.S. at 233 ("The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A state may conclude with good reason that a judicial hearing will not be as effective . . . as administrative review using medical decisionmakers. We hold that due process requires no more.").

**B**

There is a recognized Eighth Amendment protection for prisoners against "deliberate indifference" to a serious medical need, but that indifference generally involves the *failure* to provide medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In cases like Kramer's, where the medical personnel are treating him and have made a decision about the precise course of action he requests, claims are generally unsuccessful. *E.g.*, *Davis v. Agosto*, 89 F. App'x 523, 529 (6th Cir. 2004) (denying Eighth Amendment claim on summary judgment where defendant argued that the unwanted treatment of a head wound unnecessarily inflicted pain upon him).

This is because *failing* to prevent medical harm only "rises to the level of a constitutional violation where both objective and subjective requirements are met." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Where the prisoner was in the care of a doctor (and the allegation is deliberate indifference based on care given and not intentional infliction of pain), our cases offer two verbal formulations to describe when a doctor's actions were subjectively callous so as to be constitutionally cruel and unusual punishment. First, if the prisoner received "grossly inadequate care," we will conclude a doctor acted with "subjective" deliberate indifference. *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006). Second, we have favorably cited the Eleventh Circuit's test: "whether a reasonable doctor . . . could have concluded his actions were lawful." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1034 (11th Cir. 1989)). While both approaches lack absolute analytic precision, it is clear that Kramer has not alleged facts that rise to the level of seriousness they convey. Kramer asserts only that he disagrees with the decision to keep him on lithium in the face of the risk of

kidney failure and that outside doctors have not been permitted to review the decision made by the prison's medical professionals. This does demonstrate a possible disagreement over which health problem – the mental disorder or the risk of kidney problems – posed a more serious medical threat to Kramer. But it is far short of an allegation of "grossly inadequate care" or unlawful behavior. *Cf.* *Terrance*, 286 F.3d at 844-47 (holding that doctors and nurses could be found to have provided grossly inadequate care after they failed to supervise decedent or plan for risks associated with decedent's medical conditions despite their knowledge of immediate risk factors of sudden death). That is, even if he were to prove the disagreement at trial, he would not be entitled to relief because no alleged fact tends to show that the prison doctors provided "grossly inadequate care" or that their treatments were so medically unsound as to violate the law.

**IV**

The district court's dismissal of the complaint is therefore AFFIRMED.